ANNA MORGAN, Appellant, v. REINHOLD WILLMAN ET AL.—1 S. W. (2d) 193.

Division One, October 10, 1927.

*Randolph & Randolph* for appellant.

154

*Gaddy, Norris & Sawyers* for respondent.

SEDDON, C.—Suit, commenced on June 19, 1924, in the Circuit Court of Buchanan County, to foreclose a deed of trust in the nature of a mortgage upon certain real estate situate in the city of St. Joseph and described as all of the south sixty feet of Lots 1, 2 and 7, of the subdivision of Lots 1 and 2, in Block 51 in Smith's Addition, an addition to the city of St. Joseph, Missouri, which real estate, together with other contiguous and surrounding lands, was the subject of a condemnation suit or proceeding brought by the city of St. Joseph for the purpose of acquiring lands for public use as a site for a city hall. The petition is cast in two counts, the first count being in conventional form for the foreclosure of said deed of trust, and the second count seeking an injunction against the city of St. Joseph and certain named contractors, as defendants, to restrain and prevent their taking possession of the described real estate and removing the buildings therefrom until the rights and interest of plaintiff in said real property have been fully ascertained and determined, and until plaintiff, as the holder and owner of said mortgage securities, has been paid the amount of her mortgage lien, or interest, in said real estate, together with accrued interest thereon. Plaintiff, by her petition, invokes the protection and aid of Section 21, Article 2, of the Constitution of this State, and of Article 5 of the amendments to the Constitution of the United States. The answer of defendant, city of St. Joseph, in substance, denies generally the allegations of the petition and pleads a prior adjudication, in the condemnation proceeding, of whatever rights plaintiff may have had in the described land by reason of the said mortgage or deed of trust, and denies specifically that plaintiff has any right, title or interest in or to the land condemned and taken for public use.

The title in fee to the described real property was owned by defendants Reinhold Willman and Josephine Willman, his wife, by virtue of a warranty deed conveying said real property to them, dated June 26, 1913, and duly recorded in the office of the Recorder of Deeds of Buchanan County on June 27, 1913. On June 27, 1921, said Reinhold Willman and Josephine Willman made, executed and delivered a deed of trust conveying the described real property to Joseph Hager, of Buchanan County, Missouri, as trustee for R. E. Gardner, also of Buchanan County, Missouri, to secure the payment of their certain promissory note of even date therewith for $3500,

payable five years after date to the order of R. E. Gardner at the office of H. S. Smith Investment Company, St. Joseph, Missouri, with interest at the rate of seven per cent per annum, payable semi-annually from date until the payment of said note, and providing in the body of said note that if said note is not paid at maturity the makers thereof shall pay the reasonable expenses of collection, including an attorney's fee. The deed of trust aforesaid was duly recorded in the office of the Recorder of Deeds of Buchanan County on June 28, 1921. The evidence discloses that R. E. Gardner was an employee of the H. S. Smith Investment Company; that the note was made payable to him as a matter of convenience in the negotiation of said note; that he had no pecuniary interest therein; and that he endorsed the note, without recourse, on the back of the note immediately upon the execution and delivery of the note. The evidence further discloses that Joseph Hager, the trustee named in said deed of trust, was an officer of the H. S. Smith Investment Company. It further appears from the evidence that the note in question was given in renewal of an earlier and maturing note, which was then owned and held by Mrs. Emma Maier, the mother of plaintiff herein; in other words, the note and deed of trust, dated June 27, 1921, were given in renewal of an earlier and maturing note evidencing a past indebtedness of the makers thereof, rather than evidencing a present loan made to the makers. Mrs. Maier testified on the trial of the instant suit that she had acquired the earlier note upon the distribution of her deceased mother's estate, as an heir of her mother, who had been the owner and holder of the earlier note, and that she held and owned the renewal note and deed of trust of June 27, 1921, for some time after the execution and delivery of the same, and collected the interest thereon from the makers through the H. S. Smith Investment Company of St. Joseph, but that subsequently, in the year 1922, she gave the renewal note as a gift to her daughter, Anna Morgan, the plaintiff in the present suit, thereafter collecting the interest thereon through the H. S. Smith Investment Company in St. Joseph for the plaintiff herein, Anna Morgan, who sent the renewal note to her mother, Mrs. Maier, from time to time, for the purposes of collection of interest. The record tends to show that Mrs. Maier was a resident of St. Joseph during all the times herein mentioned and that her daughter, Anna Morgan, plaintiff herein, had no permanent place of residence, but was traveling much of the time in foreign states and countries, and was seldom, if ever, in St. Joseph. Defendant Reinhold Willman testified that he always paid the interest due on the renewal note to the H. S. Smith Investment Company, and that he had no personal knowledge that the note was held or owned at any time by Mrs. Maier, or by Anna Morgan, the plaintiff herein.

On November 22, 1923, the city of St. Joseph, as plaintiff, instituted a condemnation suit or proceeding in the Circuit Court of Buchanan

County against a considerable number of named defendants, seeking to acquire, by the right of eminent domain, several described tracts of land, including the real property here in controversy, for public use as a site for a city hall. Among the several named defendants in said condemnation proceeding were "Reinhold Willman and Josephine Willman; Joseph Hager, trustee; and R. E. Gardner, as *cestui que trust.*" Personal service of summons in said condemnation proceeding appears to have been had on each of the said last-named defendants. An order of publication was entered in the condemnation suit by the Circuit Court of Buchanan County, and duly published according to law, directed to "the above-named defendants and to all persons concerned," and notifying "the above-named defendants, and each of them, and all other persons who are interested by reason of ownership or in other manner or who are entitled to participate in this proceeding" of a hearing of the condemnation suit, and of the appointment of three disinterested freeholders as commissioners therein, to be held at 9:30 o'clock on the morning of January 7, 1924, at the court room of Division 1 of the Circuit Court of Buchanan County in the city of St. Joseph, Missouri, "at which time and place any other matter properly before the court may be considered and any person interested in this proceeding may appear at the time and place above mentioned and have a right to be heard and may appear before said commissioners and be heard and may except to the report of the commissioners after same has been filed in the circuit court at any time within ten days after the filing of the report of said commissioners." The report of the three commissioners was made, returned and filed in the Circuit Court of Buchanan County on March 15, 1924, and, among other findings and awards, recites: "We find the value of a tract of real estate, described as Parcel 'D' on the amended plat attached to and made a part of said ordinance, and described as all of the south sixty feet of Lots numbered one (1), two (2), and seven (7), all in Block 51, Smith's Addition, an addition to the city of St. Joseph, Missouri, said property being owned or claimed by defendants, Reinhold Willman and Josephine Willman, to be $12,500." [Then follows a number of descriptions of other tracts of land condemned and taken, and the respective ownerships thereof.] "We therefore allow to each of the several parties herein named the amount herein set out as the value and just compensation and damages so ascertained by us, as their rights, interests and claims herein respectively appear. We assess the full amount above allowed against the city of St. Joseph, which said amount is $152,080."

On May 3, 1924, the Circuit Court of Buchanan County entered a judgment in the condemnation proceeding, reciting that no objections or exceptions to the commissioners' report were filed by the named defendants, R. E. Gardner, *cestui que trust,* and Joseph Hager, trustee,

and that the objections and exceptions to said report filed by the named defendants, Reinhold Willman and Josephine Willman, had been fully heard and considered by the court; wherefore, the report of the commissioners was in all respects confirmed.

In order to show that the city of St. Joseph had actual knowledge of the existing and unsatisfied deed of trust or mortgage upon and against the land in controversy, plaintiff introduced the testimony of Joseph Hager, the trustee named in said deed of trust, elicited at the hearing of the condemnation suit on the examination of Joseph Hager by the assistant city counselor of St. Joseph, as follows: "Q. Mr. Hager, there is an encumbrance on this property? A. Yes, sir. Q. What is the amount? A. $3500, if I remember correctly. Q. Was that loan made through your company? A. Yes, sir."

Shortly after the entry of the judgment in the condemnation suit, the city of St. Joseph, through the municipal officers, sought to prevail upon Reinhold Willman and Josephine Willman to accept the award of $12,500 returned by the commissioners as the value of the tract of land in controversy. Respecting the acts of the municipal officers of the city of St. Joseph, Reinhold Willman testified at the trial of the instant suit, as follows: "Q. Now, did any of the people from the city counselor's office, or from the city hall, in connection with this condemnation proceeding, make you a tender of any money before any money was paid into court? A. Yes, sir. Q. What tender did they make you? A. In the first place, they came to us and asked us to go to the city hall, that there was a warrant there, and that we should sign for it. Q. Who was it came and did that? A. I think it was Mr. Gaddy of the city counselor's office, and I am not sure but what it was Mr. Allen, the treasurer, with him. I am not sure it was Mr. Allen. Q. What did they say about the warrant? A. That it was there at the city hall for us, $12,500, and if we would sign for it we could have our money; and we refused that, stating that we had objected to the amount allowed us, and that there was at least sixty-five or seventy-five hundred dollars more due us, and that we couldn't accept any such thing as that. Q. Now, that warrant was to whom? A. To us; to both of us, they told us. Q. That is, you mean to yourself and your wife? A. To myself and my wife. Q. Now, did they come back again? A. Then, in a few days afterwards, they came back with the money in a shoe box; they said they had $12,500, and they offered to count it, and I says, 'I will take your count for it, but I cannot accept it, under the same circumstances as I said before.' Q. Now, what did they do then? You refused to take the $12,500? A. Well, we refused to take the $12,500. Q. Did they put any restrictions upon your taking the $12,500? A. No, nothing at all; no restrictions. And then a few days afterwards we received a notice from the circuit clerk stating that the city had left $12,500 there for us, for Reinhold Willman and Josephine Willman, and that if we would

come there and sign for it we could have it. Q. Then what did you do? A. We went and got the money, in company with Judge Ryan, who had the clerk to insert over our signatures 'as to our interest in this property.' "

The Clerk of the Circuit Court of Buchanan County testified: "Q. Mr. Crouse, did you go to the city hall to get the $12,500 that was paid to Dr. Reinhold Willman and Josephine Willman? A. Yes, sir. Q. In the condemnation proceeding that is under consideration? A. I did. Q. How much money did you get, down there? A. Twelve thousand, five hundred dollars. Q. And what did they tell you to do with it, and who told you? A. I think they didn't tell me what to do with it. As I remember the occurrence, either Mr. Gabbert or Mr. Gaddy—or not Gaddy, but Mr. Gabbert or Mr. Spratt, called me and said the check was there, and requested that I come and get it and notify Dr. Willman that it was paid in for him, so that, if he desired, he could take it in settlement of his claim. Q. Mr. Spratt occupied what office? A. He was the city comptroller. Q. Now, pursuant to that, what did you do? A. I went to the city hall and received a check for the amount stated, and then on the same day wrote a letter to Reinhold Willman and Josephine Willman, a copy of which I have in my hand. Q. In response to that letter, did Mr. Willman come in? A. He and his wife came together, with their attorney, Judge Ryan, on the day following, I believe. Q. It was paid out to Mr. Willman, was it? A. Yes, sir, on the 14th day of June, 1924. Q. But a check was given by your office to them on the funds of the circuit clerk? A. Yes, sir. Q. And it was not a mere transference of the city's check over to them, but you gave a check upon your own funds, drawn upon your own account as circuit clerk? A. Yes, sir."

The letter sent by the circuit clerk, addressed to Reinhold Willman and Josephine Willman, was dated June 12, 1924, and was as follows:

"Dear Sir and Madam:

"In the case brought by the city of St. Joseph, to condemn property for city hall site, being case No. 40099, City of St. Joseph versus Simon Binswanger et al., the city of St. Joseph today paid to me the sum of twelve thousand five hundred dollars, being the amount allowed to you by the commissioners in said case. Any time you will call at my office and satisfy the record I shall be glad to pay such amount over to you.

"Very respectfully yours,
"EMMETT J. CROUSE,
"Clerk of Circuit Court."

The judgment and award relating to the real property in controversy bears the following purported stamped or written satisfaction upon the margin thereof:

"St. Joseph, Missouri, June 14th, 1924.
"For value received, I hereby satisfy the within judgment in full as to *our interest*.

"EMMETT J. CROUSE, Clerk.  JOSEPHINE WILLMAN,
"EUGENE ROSEBURG, D. C.  REINHOLD WILLMAN."

The satisfaction was made by means of a rubber stamp, and the above italicized words (italics being our own), "as to our interest," being written with pen and ink.

The promissory note of Reinhold Willman and Josephine Willman for $3500, dated June 27, 1921, owned and held by plaintiff, Anna Morgan, and offered in evidence by plaintiff, bears an endorsement on the back of said note to the effect that all interest thereon has been paid to December 27, 1923. Respecting his intention not to pay said note out of the award of $12,500, Reinhold Willman testified: "Q. Isn't it a fact that, as far as you are concerned, this is a friendly suit between Anna Morgan (plaintiff) and yourself? A. It is simply this: that the property is good for the money, and I got my money, and the money that we got was for the interest we had in the property. Q. What did you do with the money that you got? A. I don't think it is anybody's business. Q. Have you paid this mortgage? A. No, sir, and I don't expect to. We were on a deal for a compromise, and the city knew all about it. We have a suit for it, too, and the city was fully aware of it, and if the city wanted us to pay for it they should have put the money in separate sums to where they put this. If they didn't want to give us $12,500, they should have said so. Q. Have you got any arrangement of any kind with the holder of this mortgage? A. No, sir, not one thing. Q. Have you got this money laid up anywhere? A. No, sir. Q. In other words, you are concealing this money at this time? A. Not a bit of it. It is our own money; we can have it in our own pocket, and it is nobody's business."

The several defendants offered no evidence on their own behalf, but submitted the cause upon plaintiff's evidence. At the conclusion of the trial, the trial court took the cause under advisement, and, on October 21, 1924, rendered its finding and judgment to the effect that plaintiff's petition be and shall stand dismissed as to the defendants city of St. Joseph, John T. Whalen, and Bernard B. Feeney, but that plaintiff have and recover from the defendants, Reinhold Willman and Josephine Willman, the sum of $3,704.16, together with interest on said sum from the date of judgment at seven per cent per annum and an attorney's fee in the sum of $350, with the costs of the action, and that execution issue therefor against said defendants Reinhold Willman and Josephine Willman.

In due time, plaintiff filed her separate motions for a new trial and in arrest of judgment, preserving and saving therein the con-

stitutional questions raised by the pleadings, namely, that the effect of the finding and judgment of the trial court is to deprive plaintiff of her property for public use without compensation in derogation and violation of Section 21, Article 2, of the Constitution of Missouri, and of Article 5 of the Amendments to the Constitution of the United States. Both motions being overruled by the trial court and exceptions thereto being taken and saved, plaintiff was granted and allowed an appeal to this court. We take jurisdiction of the appeal by reason of the constitutional questions raised by the pleadings, kept alive during the trial, and saved by and in the motion for new trial. [Sec. 12, Art. 6, Mo. Const.; Sec. 5, amendment of 1884 to Art. 6, Mo. Const.]

I.  The plaintiff and appellant urges here that the trial court erred in dismissing her petition as to defendant, city of St. Joseph, and in refusing to render a judgment of foreclosure against the land in controversy and in refusing to enforce the unsatisfied deed of trust thereon; and, furthermore, that the effect of the finding and judgment of the trial court is that the payment of the entire award to the fee owners of the land, Reinhold Willman and Josephine Willman, amounted to a full satisfaction of the deed of trust and relieved the land of the lien of such encumbrance, without the payment to plaintiff of any compensation for the taking, for public use, of her property and interest in said land by reason of her ownership of the promissory note secured by said deed of trust. The defendant and respondent, city of St. Joseph, on the other hand, contends that plaintiff's rights and interest, if any, in the land in controversy were conclusively litigated and adjudicated in the condemnation proceeding; that, if plaintiff had any interest in the award made for the land taken in the condemnation proceeding, she was negligent in failing to assert her rights and interest in the award in that proceeding; that no compensation or damages were awarded to plaintiff, or to those under whom she claims, by the report of the commissioners in the condemnation proceeding, and therefore plaintiff cannot complain, in this collateral suit or action, of the failure of the commissioners to award her compensation; that it is proper, in the condemnation of mortgaged lands, to award and pay to the owner of the equity of redemption, or fee owner of the land, the compensation awarded for the taking of the land, on the theory that the award stands in the place and stead of the land taken and the award is subject to payment of the encumbrance or deed of trust, and the question as to the distribution of the award between the fee owner and the mortgagee is one which does not concern the condemnor of the land; and, finally, that the payment of the award of $12,500 by the city of St. Joseph to the Clerk of the

Circuit Court of Buchanan County was a payment into court for the use and benefit of the parties entitled thereto, including plaintiff, and absolved the city of St. Joseph of any further duty or obligation respecting the proper distribution thereof.

So far as we have been able to find, the precise questions presented to us for decision on this appeal have not heretofore been ruled or decided by any appellate court of this State, and learned counsel for the respective parties have directed us to no judicial decision in this State touching the precise questions now before us. A correct ruling or determination of those questions makes necessary, and involves, the construction of our State Constitution and certain applicable statutes of this State. Section 21, Article 2, of the Missouri Constitution provides: "That private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law; and until the same shall be paid to the owner, or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested. . . ."

The city of St. Joseph is a city of the first class and is subject to the provisions of Article 2, Chapter 72, Revised Statutes 1919, applicable to cities of the first class. The procedure to be followed by cities of the first class in the exercise of the power of eminent domain is prescribed in Sections 7767 to 7777, inclusive, and Section 7833, Revised Statutes 1919, all of which sections are a part of said article and chapter.

Section 7775 provides: "When the report of the commissioners shall have been approved, or final action taken thereon by the court, the clerk of the circuit court shall make a certified copy of the judgment of the court thereon, and deliver the same to the city clerk, who shall forthwith file the same. It shall be the duty of the clerk, as soon as the same is filed, to furnish a copy thereof to the common council, and the common council shall, at its first session thereafter, make an appropriation for the payment out of the city treasury of the amount awarded against said city, . . . *and the city treasurer shall cause the same to be paid to the parties entitled thereto, respectively, or into the court for their use,* as provided by ordinance."

Section 7776 provides: "If the ownership of property condemned be in controversy, the amount of the damages assessed for said property shall be paid into the court for the use of the successful claimant of the property: Provided, however, that as soon as the damages assessed shall have been paid or tendered *to the parties entitled thereto, respectively,* the improvement may be proceeded with."

Section 7833 provides: "The city shall not be entitled to the possession of any lot or parcel of property taken under the provisions

of this article until *full payment of the compensation therefor*, as determined, *be made or paid into court for the use of the persons* in whose favor such judgment may have been rendered, or *who may be lawfully entitled to the same.* . . . If the title to the property taken be in controversy, the right to the compensation therefor shall be determined in a suit between the parties claiming the same, in which none of the costs of litigation shall be borne by the city unless the city is one of the claimants, and *during such controversy such compensation shall remain in the possession of the court;* but the title and possession of the city to the property taken shall not be in any manner affected by such controversy." (Above italics are our own.)

Respondent, city of St. Joseph, takes the position that, inasmuch as the Willmans, the fee owners of the land in controversy; Hager, the trustee named in the deed of trust thereon; and Gardner, the *cestui que trust* or beneficiary named in the deed of trust of record, were all made parties defendant in the condemnation proceeding and were personally served with process in such proceeding, and inasmuch as the order of publication made in the condemnation proceeding was directed to the named defendants and "to all persons concerned," therefore all parties representing plaintiff's interest in the land were properly and legally in court in response to due process in the condemnation proceeding (and plaintiff, herself, was in court by reason of constructive service under the general publication order) and could have had plaintiff's rights and interest adjudicated therein had they desired so to do. But, assuming that plaintiff and those persons of record representing her interest in the land were in court by reason of personal service of process and the general order of publication in the condemnation proceeding, nevertheless it was no part of the duties of the commissioners in that proceeding to adjudicate and determine the rights, title and interests of the several defendants in and to the land sought to be condemned and taken in such proceeding. The statute (Sec. 7770, R. S. 1919) clearly defines the duties of the commissioners in such proceeding, as follows: "It shall be the duty of the commissioners to ascertain the actual value of the land and premises proposed to be taken, . . . and for the payment of such values and damages to assess against the city the amount of benefit to the public generally, . . ." The applicable condemnation statute, by its terms and language, does not require the named defendants, or other parties interested, in the condemnation suit, to file a claim or claims for compensation; neither does the statute deny compensation to any interested party who fails to appear in the condemnation proceeding or who fails to file a claim for compensation therein. The sole purpose of the condemnation proceeding, as contemplated by the statute, is to adjudicate and determine the *value* of the *land* proposed to be taken or damaged, and not

to adjudicate the rights or interests of parties in the land. Conceding, for the sake of argument, that plaintiff was legally made a party to the condemnation proceeding by reason of the general order of publication therein, nevertheless her right to compensation, guaranteed by Section 21, Article 2, of our State Constitution, is wholly unaffected by her failure to appear in the condemnation proceeding or to file a claim for compensation therein, provided, of course, that her *property* be taken or damaged for public use in such proceeding. [Holmes v. Kansas City, 209 Mo. 528.] The clause, ''said property being owned or claimed by defendants, Reinhold Willman and Josephine Willman,'' contained in the award made in the commissioners' report respecting the land in controversy, is merely descriptive of the land to which the award attached, and is in no sense a legal, judicial, or conclusive, adjudication of the right of the Willmans to the entire award of $12,500, fixed as the value of the land condemned and taken.

II. The next questions which confront us are whether plaintiff's ''property'' has been taken for public use in the condemnation proceeding, and whether plaintiff is an ''owner'' of property, within the meaning and intent of Section 21, Article 2, of our Constitution and the applicable sections of the statute relating to cities of the first class. There is a wide contrariety of judicial opinion on the question whether the interest of a mortgagee in the lands of a mortgagor is ''property'' within the meaning of similar constitutional and statutory provisions, and whether a mortgagee is an ''owner'' of property, as that word is used in similar constitutions and statutes. Juristic opinion on these questions is hopelessly irreconcilable, but the weight of respectable judicial authority seems to favor the protection of the rights and interest of the mortgagee in the exercise of the power of eminent domain. The subject is discussed in 20 Corpus Juris 856-858, and the authorities *pro* and *con* therein cited, without any attempt on the part of the text-writer, however, to reconcile the authorities.

An eminent text-writer, Mr. John Lewis, in his recognized and widely quoted treatise on the subject of Eminent Domain (3 Ed.) section 523, page 947, deals with the subject thus: ''On the question whether mortgagees are necessary parties to condemnation proceedings, the authorities are not only conflicting but very unsatisfactory. The cases go almost entirely upon the language of the statutes, as though it was a matter entirely within the control of the Legislature. It seems to us that a mortgagee stands upon higher ground, that his interest in the land and the rights secured to him by his mortgage are property which cannot be taken from him without notice and an opportunity to be heard. Where a right of way is taken through a

farm it may be a matter of slight consequence. But, when an entire tract is taken which is mortgaged for all it is worth, and the compensation handed over to an insolvent mortgagor, it becomes a very serious matter. This looks very much like depriving a man of his property without compensation and without due process of law.''

In Board of Levee Commissioners v. Wiborn, 74 Miss. 396, the board of levee commissioners paid the award in the condemnation proceeding to the mortgagor, and Wiborn, the mortgagee, instituted suit against the board of levee·commissioners for his damages. Said that court, speaking through COOPER, C. J.: ''There is great conflict of decision upon the question whether a mortgagee out of possession, but whose mortgage is duly recorded, is an 'owner' of the land, within the meaning of that word, when used in statutes authorizing the exercise of the power of eminent domain on notice to, and proceedings against, the 'owner' of lands. In some states it is held that, while the mortgagee has only an incumbrance on the land as security for his debt, that security is valuable as property, often far exceeding the real interest of the mortgagor, and, therefore, such mortgagee should be regarded in law, as he is in substance, the owner of the property, under statutes authorizing third persons or the public to take the land. In others it is decided that the mortgagee, especially before forfeiture, has no estate in the land, but only a security for his debt, and therefore is not an owner of the land. . . . It is, however, held in all the states, that the fund, when awarded, stands so far in the place of the land taken, that the mortgagee may, by seasonably proceeding, arrest its payment to the mortgagor, and secure its application to the mortgage debt. . . . The report of the commissioners showing what sums were awarded to the mortgagor, and to his tenants who had crops growing on the land, states that: 'To the mortgagee, G. Wiborn, we award nothing, as his security is ample.' This statement, that the security held by the mortgagee was ample, seems to have been not true, for upon the sale of the mortgaged property there remained a balance due of something like $20,000 over and above the sum realized at such sale. The levee commissioners, by the very return of the award, had knowledge of the fact that there was a mortgage upon the land appropriated, due to the appellee; the statute under which the proceedings were had empowered the treasurer, as the officer of the board, to deposit the sum awarded in the hands of the chancery clerk, and thus to discharge the debt due by the board. In the face of this knowledge, and with full power to protect all parties in interest, he elected to pay the sum awarded to the mortgagor; and the single question is whether, under these circumstances, such payment can be interposed as a bar to the demand of the mortgagee. We think such payment does not preclude a recovery by the mortgagee, and that, whether he was

or was not a necessary party to the proceedings, the statute manifestly contemplated just and equitable action on the part of the officers of the board in the payment of awards, and the provision that, in cases of doubt, the money might be paid over to the clerk of the chancery court was intended not only to protect the board from the danger of being required to pay twice for the same land, but to preserve to parties having claims upon the fund the opportunity of asserting their rights by proper judicial proceedings. The fund in the hands of the treasurer was, by necessary implication, made to stand for the land, in reference, at least, to conflicting claims known by him to exist. As to such funds he stood in the relation of a mere stakeholder, and, if he was guilty of the folly of assuming to determine to whom it should be paid, the consequence of a mistake must fall upon the board whose officer he was, rather than upon an innocent third person entitled to the fund, and of whose rights the board, through its agent, had full notice." To the same effect is Engelhardt v. City of Brooklyn, 21 N. Y. Supp. 777.

In Sherwood, Admr., v. City of Lafayette, 109 Ind. 411, that court said: "The authorities, without material conflict, hold that a mortgagee cannot be deprived of his lien by a condemnation of the land embraced in his mortgage. It is true, as contended by appellees' counsel, that a mortgage does not convey title to the mortgagee. [Fletcher v. Holmes, 32 Ind. 497; Favorite v. Deardorff, 84 Ind. 555.] But, while the mortgage does not convey title to the land, it nevertheless does convey to the mortgagee an interest in the land itself of which he cannot be divested. [Lease v. Owen Lodge, 83 Ind. 498; Helphenstine v. Meredith, 84 Ind. 1.] . . . A mortgage does create an interest in the land, and the authorities declare that proceedings under the right of eminent domain cannot destroy the interest it creates. In Severin v. Cole, 38 Iowa, 463, the question was examined with care, and it was said that: 'The mortgagor, it is true, holds the legal title; but the mortgagee has an equitable interest in, or right to, the mortgaged property, and under the above statute is an "owner of the real property."' It was said by the court in Parks v. City of Boston, 15 Pick. 198, 203: 'It has heretofore been decided by this court, and apparently upon much consideration, in the case of Ellis v. Welch, 6 Mass. 246, that the term "owner," in this statute, includes every person having an interest in real estate capable of being damnified by the laying out of a street.' . . . As said in Severin v. Cole, supra: 'This rule, too, is equitable and just. The mortgage being of record, it was entirely practicable for the defendant, in obtaining its right of way, to give notice to the mortgagee of record, and thereby protect its own interests and those of such mortgagee or his assigns.' It is only by adopting the view of these authorities, and treating the mortgagee as an owner within the meaning

of the statute, that the statute itself can be upheld, for it is very clear upon principle and authority that the mortgagee does own some interest in the land which cannot be divested except by due proceedings under 'the law of the land.' [Soulard v. United States, 4 Peters, 511.] Nor is any violence done to the language of the statute in treating a mortgagee as an owner, for, in a limited sense, he is an owner, as he has a proprietary interest in the land itself.''

In South Park Commissioners v. Todd, 112 Ill. 379, the syllabi, amply supported by the opinion of that court, declare the law as follows: ''Where the person entitled to receive the compensation awarded in a proceeding to condemn land for a public use is not known, or is a nonresident, the money should be paid into the county treasury for the use of the owner or person entitled thereto, and if it is paid over to one not entitled to it, the courts will compel its payment again in favor of the rightful claimant. The commissioners awarding the compensation have no authority to determine to whom the money shall be paid. Where the property of a mortgagor is condemned for public use, and the compensation to be paid is assessed, the mortgagee or holder of the mortgage debt will be entitled to be first paid out of it the amount due him, and the mortgagor the balance.''

In Municipal Securities Co. v. Kansas City, 195 Mo. App. 466, plaintiff was the holder of a special tax-bill constituting a lien on certain land condemned by the defendant city for public use. It was ruled therein (as stated in the syllabus) that: ''The holder of a tax-bill, issued by a city for public work, has a lien on the land therein described; and if the city condemns such land for a park, the lien continues against the money in the hands of the city assessed as damages to the owner. If the city, with knowledge of the lien, pays the money to the owner without notice to the tax-bill holder, it becomes liable to the tax-bill holder for damages measured by the loss of the money which should have been applied in discharge of the lien.'' Said ELLISON, P. J., speaking for the Kansas City Court of Appeals. in that case: ''In our opinion no valid reason can be given why a liability does not exist. Three prominent facts stand out in the record. One, that plaintiff had the lien; and, second, that defendant (city) appropriated the property on which the lien existed; and, third, that defendant (city) paid out condemnation money to the owners, whose condemned lands it knew were subject to the lien of plaintiff's tax-bills, without ever having given plaintiff any notice of its proceedings and of which plaintiff had no knowledge until about six months after the money had been paid. It can be stated in another way: It has been decided that if there is a lien for a tax-bill against the real estate in a city, which realty has been converted into a fund, the lien will attach to the money. [Ross v. Gates, 183

Mo. 347; Buchanan v. Kansas City, 208 Mo. 681; Ross v. Gates, 117 Mo. App. 237.] So when the city laid hold of that money and without right—without authority from the lienor—and, with notice of his lien, paid it out to the owner of the realty, it converted the money and is liable to the lienor in damages measured by the loss of the money which should have been applied in discharge of the lien. That one with an interest in land cannot have it taken from him by a condemnation proceeding without being made a party thereto is a fundamental proposition of law which finds apt illustration in Holmes v. Kansas City, 209 Mo. 528. . . . Defendant next insists that the lien for plaintiff's tax-bills was taken off the land and transferred to the money arising out of its condemnation, and that therefore that fund should be followed by some appropriate action against the owners who received it from the city. It is not necessary to inquire what other remedy or remedies plaintiff may or may not have, as long as the one it has elected to pursue rightfully belongs to it and upon every just and legal principle affords relief.''

After a careful and thoughtful analysis and study of the authorities bearing upon the question, we are constrained to the view, and so hold, that the interest of plaintiff in the land in controversy, by reason of being the owner and holder of the note secured by the deed of trust upon such land, is ''property,'' and that plaintiff is the ''owner'' of property, within the meaning and intent of Section 21, Article 2, of the Constitution, and the applicable statutes, of this State.

The defendant city cites Thompson v. Railway Co., 110 Mo. 147, and Railway Co. v. Baker, 102 Mo. 553, in support of its contention that it is proper, upon the condemnation of mortgaged land, to award and pay to the owner of the equity of redemption the full amount of the damages or value assessed, since the award stands in place of the land and can be subjected to payment of the mortgage. In our opinion, neither of the cited cases bears upon the precise questions to be ruled in the instant case. In the Thompson case, the opinion discloses that the mortgagee was personally notified of the pendency of the condemnation proceeding and was personally notified of the payment of the award into court, yet he made no claim to the award, or any part thereof, and took no steps to protect his interest therein; whereupon, the court, upon written motion of the owner of the equity of redemption, a copy of which written motion was duly served upon the mortgagee, ordered the award paid to the owner of the equity of redemption. Commenting upon the indifferent and negligent conduct of the plaintiff mortgagee in that case, this court remarked: ''Viewing the whole record, it is seldom we meet with as much indifference to one's rights as plaintiff manifested in regard to this claim of his against the property condemned, and upon the whole we

do not consider that it would be just or right to compel the railway company to vacate this property, after having paid for it once, and to stop the public commerce over its road by putting plaintiff in possession of the property.''

III.  Respondent city contends that the payment of the award by the city to the Clerk of the Circuit Court of Buchanan County was a payment ''into court for the owners'' of the property taken in the condemnation proceeding, and, if plaintiff had any interest in the award made for the land taken in the condemnation proceeding, she was negligent in failing to assert her rights and interest in that proceeding.  Appellant, on the other hand, insists that there was no payment of the award or compensation ''into court,'' and that she had no knowledge or notice of the payment of the award to the Willmans, who were the owners of the equity of redemption in the land taken in the condemnation proceeding, and, therefore, neither plaintiff and appellant, nor the trustee and the beneficiary, respectively, named in the deed of trust of record, were afforded any opportunity whatsoever to lay claim to the award, or to have plaintiff's rights therein adjudicated and determined, before the entire award was paid to the fee owners of the land taken.

The Constitution of this State (Sec. 21, Art. 2) clearly and unequivocally requires that, until the compensation or award *''shall be paid to the owner, or into court for the owner,* the property (taken) shall not be disturbed *or the proprietary rights of the owner therein divested.''*  (Italics ours.)  Construing this constitutional mandate, this court has said, in Holmes v. Kansas City, 209 Mo. 531: ''And we will add here that the constitutional mandate is not only not met by a conditional deposit of money, but it is likewise not met by the deposit in court of the damages assessed for the use of parties other than the owner.  Nor is it met by paying into court for the special purpose of having the court determine which of two parties is entitled thereto, leaving out of the determination the owner or one of the owners, as in this case.''

The applicable statutes (Secs. 7775, 7833, R. S. 1919) require that ''the city treasurer shall cause the same to be paid to the parties entitled thereto, respectively, *or into the court for their use,''* and that ''the city shall not be entitled to the possession of any lot or parcel of property taken  .  .  .  until full payment of the compensation therefor, as determined, *be made or paid into court for the use of the persons*  .  .  .  *who may be lawfully entitled to the same,''* and, furthermore, ''if the title to the property taken be in controversy, the right to the compensation therefor shall be determined in a suit between the parties claiming the same,  .  .  .  *and during*

*such controversy such compensation shall remain in the possession of the court."* (Italics ours.)

The record before us in the instant case indubitably and unquestionably discloses that none of the award or compensation for the land taken in the condemnation proceeding was paid to plaintiff, or to the trustee or the beneficiary, respectively, named in the deed of trust affecting said land, which was of record in Buchanan County. Therefore, unless such compensation was paid *into court* for appellant, as an owner of the property taken, the constitutional and statutory mandates have not been complied with by the condemnor, city of St. Joseph, and the proprietary rights of appellant, as an owner, have not been divested by reason of the condemnation proceeding. The record herein discloses that the deed of trust affecting the land taken, and which was of record in the Recorder's office of Buchanan County long before the institution of the condemnation proceeding, recites upon its face that the mortgage note is payable at the office of H. S. Smith Investment Company, in St. Joseph, Missouri. Payment by the respondent city of the principal and interest of the mortgage note at the office and place named therein would have discharged the note and the debt evidenced thereby. Furthermore, the deed of trust discloses upon its face that Hager, the trustee, and Gardner, the beneficiary of record, were both residents of Buchanan County, and the proof herein tends to show that both were residents of St. Joseph during the pendency of the condemnation proceeding and at the time the award was paid to the Willmans. The evidence also tends to show that the respondent city, through its municipal officers, tendered the entire amount of the award to the Willmans, and, upon their refusal to take the same, the city then delivered the entire amount of the award to the Clerk of the Circuit Court of Buchanan County, who, without any order, rule, or direction of the court having jurisdiction of the condemnation proceeding, and without notice to plaintiff, the H. S. Smith Investment Company, Hager, or Gardner, paid the entire amount of the award to the owners of the equity of redemption and allowed them to satisfy the judgment in the condemnation proceeding *as to their interest only.* No order or record of the Circuit Court of Buchanan County having jurisdiction of the condemnation proceeding is in evidence in the record before us showing the payment of the award into the court in such proceeding; in fact, it stands apparently conceded and undisputed upon the record herein that no such order was made and entered in the court having jurisdiction of the condemnation proceeding. Nor is any order, rule, or direction of distribution of the award shown to have been made and entered in or by the court having jurisdiction of the condemnation proceeding. Moreover, the record does not disclose that such court had any knowledge of the delivery of the award

by the city to the clerk, or of the subsequent and almost immediate delivery and payment of the award to the Willmans. Under such facts and circumstances, we cannot say that the constitutional and statutory mandates were complied with by the respondent city, or that the award was paid *into court* for the use of the plaintiff and appellant, as an owner of the property taken and condemned.

A deposit, or payment, in court is "where property is deposited with an officer of the court for safe-keeping, pending litigation, e. g., until a question as to the 'person entitled to its possession is determined." [Rapalje and Lawrence's Law Dictionary.] In Hammer v. Kaufman, 39 Ill. 88, it is pointedly said: "The money, in this case, was paid into the hands of the clerk by complainants while the original cause was pending. It was not. under an order of, nor does it appear to have been within the knowledge of, the court below. There is nothing from which it can be inferred that the clerk was either a general or special receiver. or depositary of the court, or that the payment, after it was made, was recognized or treated as a fund in court. . . . The clerk is not by virtue of his office a receiver of the court, and is not bound to receive such deposits, except under an order of the court. And when he has thus received money paid into court, he can only be warranted in paying it out on the order of the court." So, in Baker v. Hunt, 1 Wendell (N. Y.) 103, it was said: "The clerk had no right to receive the money, without a rule of court."

It is said by respondent, in its brief herein: "It may be said that the [trial] court, viewing the whole record, was of the opinion that this beautiful friendship that seems to spring up between Gardner, Willman, Hager and this plaintiff was only a scheme to filch from the city an additional award." Be that as it may, we find no evidence, direct or inferential, in the record before us that plaintiff had any personal acquaintance with the Willmans, Hager or Gardner, or that she conspired with either of them to filch the city. The Constitution of this State guarantees to plaintiff, as an owner of property taken by the city for public use, just compensation for the property so taken, and that, until compensation therefor shall be paid to her, or *into court for her*, as an owner, the property shall not be disturbed or plaintiff's proprietary rights therein divested. Apparently through no fault or neglect of her own, and without any notice to her or to the representatives of her interest of record, so far as the record before us discloses, the entire award was paid by the respondent city to the clerk of the circuit court, and, without any order, rule or direction of that court, was almost immediately paid over to the Willmans, as a consequence of which action on the part of the city and its officers, plaintiff had no opportunity to lay hold of the award, or claim her rightful share thereof, before payment of the same was

made to the Willmans, who unmistakably manifest the intention to keep the entire award for their own uses and purposes. As we view it, plaintiff is not obliged to follow the award and collect her rightful share thereof from the Willmans, be they solvent or insolvent (concerning which there is no proof upon this record), for until she has been paid just compensation for her property taken or until such compensation has been paid into court for her, which has not been done, as disclosed by the record herein, her proprietary rights in the property taken and condemned are not divested and her property should not be disturbed by the condemnor city. If it be a hardship for the respondent city to respond to plaintiff's claim of right herein, then the plight in which the respondent city finds itself is wholly the result of the acts and conduct of its own officers in derogation of the Constitution and statutes of this State, which clearly and unmistakably prescribe and lay down their duties and course of action in such condemnation proceedings.

It follows from what we have said herein that the condemnor city took title to the land in controversy subject to the unpaid and unsatisfied lien and encumbrance of the deed of trust of record, and that the proprietary rights of plaintiff and appellant (as the owner and holder of the mortgage note described in and secured by said deed of trust) in said property have not been divested. While the judgment *nisi* is right to the extent that it allows a recovery in favor of plaintiff against the defendants, Reinhold Willman and Josephine Willman, as the makers of the promissory note secured by said deed of trust, for the principal amount of said note and the accrued interest and attorney's fees due thereon, nevertheless the learned trial court erred in dismissing plaintiff's petition as to the defendant city of St. Joseph, and in denying plaintiff a judgment of foreclosure of the deed of trust on and against the land in question. Therefore, the judgment *nisi* must be reversed and the cause remanded with directions to the trial court to reinstate plaintiff's petition and to enter a new judgment thereon, in favor of plaintiff, and against the defendants Reinhold Willman and Josephine Willman, for the principal amount of the promissory note with accrued interest and attorney's fees due thereon, and against the defendant city of St. Joseph, as the owner of the equity of redemption in said real property, for the foreclosure of said deed of trust and for the sale of the real property described therein and for the application of the proceeds of such sale to the payment of the principal debt, interest, attorney's fees, and costs, and granting plaintiff all necessary and proper injunctive relief, as prayed in the petition, until plaintiff has been paid the amount of the principal debt, together with interest and attorney's

fees due thereon, and until said deed of trust has been fully satisfied. It is so ordered. *Lindsay* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur.