STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION of Mis-
souri, Respondent,

v.

Harrison B. HOVIS and Annie L. Hovis,
Appellants.

No. 52723.

Supreme Court of Missouri,
Division No. 2.

March 11, 1968.

Robert L. Hyder, State Highway Commission of Missouri, Jefferson City, Stan J. Murphy, State Highway Commission of Missouri, Sikeston, Raymond S. Roberts, Trial Atty., Farmington, for respondent.

John W. Reid, II, J. B. Schnapp, Schnapp, Graham & Reid, Fredericktown, for appellants.

BARRETT, Commissioner.

In this proceeding in condemnation a jury awarded the landowners, Mr. and Mrs. Harrison B. Hovis, $15,000.00 damages. Contrary to the provisions of Civil Rule 78.01, V.A.M.R. ("Every order allowing a new trial shall specify of record the ground or grounds on which said new trial is granted"), the trial court sustained the state's motion for new trial without specifying any of the fourteen assignments of error set forth in its motion. Since "it shall never be presumed that the new trial was granted on any discretionary grounds" (Civil Rule 83.06(c)) and "the presumption shall be that the trial court erroneously granted the motion for new trial" (Civil Rule 83.06(b)) the state has assumed the burden of sustaining the court's action. In recognition of the rules and its burden the state does "not raise any discretionary grounds" but asserts that the court erred as a matter of law in striking and later admitting for the jury's consideration the testimony of its witness, expert appraiser Frank DeGear.

In brief these are the background circumstances: Mr. Hovis, age 78, owned a farm consisting of 487 acres near Fredericktown in Madison County. He moved onto the land as a tenant in 1916, purchased 211 acres of the tract in 1938 and the remaining 276 acres in 1945. In that year he built a six-room house with bath, furnace and basement. In relocating and rebuilding U. S. Route 67 as a limited access four-lane highway the state condemned 34.73 acres of the Hovis farm. The road was so constructed that 305 acres were, as one wit-

ness said, "severed from the other land," leaving approximately 147 acres on the left side of the highway. Among other items considered by the witnesses was the fact that the highway necessitated the construction of 10,000 feet of fencing, a large ever-running spring was destroyed, the barn had to be moved and a new cattle chute had to be constructed. The landowners produced three expert witnesses, at least two of them residents of Madison County, who fixed the before and after values and damages at $41,320.00, $24,170.00, $17,210.00; $43,200.00, $24,000.00, $19,250.00, and $43,500.00, $26,050.00, and $17,450.00, respectively. Mr. Hovis fixed the values and damages at $45,000.00 before the taking and $25,000.00 after and his damages at $20,000.00. The state produced two expert witnesses, one from Sikeston and the other, Dub Crutcher, from Essex who fixed the values and damages at these sums —$22,685.00 before the taking, $17,635.00 after, damages $5,055.00, and $19,070.00, $13,217.00 and $5,823.00 respectively.

The state's third witness was Mr. De-Gear, age 70, who fixed these values and losses to the Hovis farm, $25,045.00, $22,548.00 and $5,563.00. While he qualified as an appraiser he said, "I've been a lumberman and contractor outside of the seven years, I was a flour miller at that time, but my last 40 years has been in one spot. * * * As a contractor and a retail lumber man." The land was condemned as of April 8, 1962, and the witnesses in testifying in December 1966, gave their opinion of values, of course, as of April 1962. It developed that Mr. DeGear had not been employed by the state until November 15, 1966, and did not make his appraisal until after that date, about ten days prior to the trial. On cross-examination landowners' counsel observed that Mr. De-Gear had "testified from figures" and he asked to see them, state's counsel objected as "work product" and a colloquy ensued and state's counsel said, "He has a sort of a, it's this kind of folder, he opened it up and looked at notes and things he has in

here, yes, sir. Part of it's work product and part of it's work product for the State Highway Department giving him the various information he needs and things of that kind." At this point the court ruled that landowners' counsel could not have the folder. Then in further cross-examination as to Mr. DeGear's personal knowledge of the type of building and improvements he said, "I have a list of them now. Q. Who gave you that list? A. Nobody gave them to me, I acquired them." And finally he said that he acquired "them" from "an appraiser that made an appraisal on it," Silas Dees who did not testify. He insisted that he had personally checked the buildings and he knew they were the same from "a photograph of some of them." And he got the photograph in "(a) kit that Silas had." Counsel again asked to see the kit and state's counsel again objected "it's a work product of Silas Dees an appraiser of the State Highway Department." Based on counsel's statement landowners' counsel objected that the kit was "hearsay" and he said, "this man is testifying from hearsay and I ask all of his testimony be stricken from the record and the jury advised to disregard it. It's based on hearsay and wholly incompetent." The court responded: "Sustained. Jury disregard this man's testimony." State's counsel then again examined the witness and developed that he had a personal acquaintance with the Hovis property in 1962 and he requested the court ruling striking DeGear's testimony be "withdrawn and that the jury be instructed that he is a competent witness under all the testimony." The court said, "I'll deny that. Call your next witness please." The state had no other witnesses, the landowners called two witnesses in brief rebuttal and then the court of its own motion addressed the jury: "Ladies and gentlemen of the jury, we have reviewed a certain portion of the transcript, on account of a ruling, the Court made on a motion after reviewing the transcript we found the ruling, the Court made was incorrect. You are, at this time, instructed by the Court to consider the testimony of Mr. DeGear. He was a

competent witness and he was qualified to give the testimony that he gave." There was no response to this ruling by state's counsel, the instructions were read and the trial proceeded.

Despite the court's instruction to the jury the state insists that the court's ruling was nevertheless erroneous and prejudicial *as a matter of law* and that the court's final ruling did not cure the error. It is said that the court's ruling was an erroneous application of the hearsay rule and "was based on the erroneous mistake of law." The state cites no precisely applicable cases in support of its argument but relies on rules which it says by analogy should govern here. It is not necessary to distinguish these cases in detail, they are Jones v. Terminal R.R. Ass'n of St. Louis, Mo. App., 246 S.W.2d 356; Dorn v. St. Louis Public Service Co., Mo.App., 250 S.W.2d 859, and City of Gallatin ex rel. Dixon v. Murphy, Mo.App., 217 S.W.2d 400. The latter case was a suit on the official bond of a town marshal for shooting and killing the plaintiff's husband in an attempt to arrest him. The plaintiff called the defendant marshal as a witness and established the basic circumstances of the killing. Then the plaintiff called a witness who testified that the marshal's reputation for truth and veracity was bad. When asked about his personal feelings toward the defendant marshal the witness said, "Why he is all right only he ain't honest, that's all." Then it developed that the witness' unfavorable opinion grew out of the fact that many years before he had loaned the marshal $50.00 "To pay himself out of the Maysville jail" and had never been repaid. The next day the court instructed the jury "that you will entirely disregard and hold for naught the entire testimony of the witness Harrison Worrell, in so far as it pertains to the character or reputation of the defendant City Marshal." The court denied defendant's request for a mistrial. Upon appeal the court applied the rule that "(a) party cannot directly impeach his own witness even though he be the other party to the suit." And the court concluded, "In a close case, such as the one with which we are dealing, the withdrawal of incompetent evidence, or the court's instruction to the jury to disregard it, does not cure the error in admitting it in the first instance."

The incident complained of here was not so manifestly inflammatory or "this infraction (was) so reprehensible and damaging as to require appellate interference." Jones v. Terminal R.R. Ass'n of St. Louis, Mo.App., 246 S.W.2d l. c. 361. Aside from the problem of whether the court in fact ruled on the qualification of the witness, a discretionary matter, the witness was not conspicuously qualified and his evidence was but corroborative of the state's other two witnesses. In any event it may not be said, to avoid the force and effect of Civil Rules 78.01 and 83.06, that as a matter of law the state is entitled to a new trial. In the circumstances here the applicable principle is that "(t)he exclusion of testimony when first offered is not erroneous where the record shows that it was later admitted," particularly when there has been no manifest prejudice (5 Am.Jur.2d Appeal & Error, Sec. 806, p. 248) by the court's ruling, Shelby County R–IV School District v. Herman, Mo., 392 S.W.2d 609, 616–617; State ex rel. State Highway Comm. v. Devenyns, Mo.App., 179 S.W.2d 740, 741, both condemnation cases.

In accordance with these views the order granting a new trial is reversed and the cause remanded with directions to reinstate the jury's verdict and enter a judgment in favor of the landowners.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.