STATE of Missouri, ex rel. MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Respondent,

v.

MERAMEC VALLEY ELEVATOR, INC., et al., Claude Hanks, Mark Twain Bank, and South Side National Bank In St. Louis, Appellants.

No. 54857.

Missouri Court of Appeals, Eastern District, Division Two.

June 6, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 11, 1989.

Case Transferred to Supreme Court Sept. 12, 1989.

Case Retransferred to Court of Appeals Jan. 26, 1990.

Original Opinion Reinstated Feb. 15, 1990.

Greg Allen Luber, Claude Hanks, Creve Coeur, Richard Scott Bender, Clayton, Fortis M. Lawder, and Michael W. Forster, St. Louis, for appellants.

Paul R. Sterrett, St. Louis, for respondent.

GARY M. GAERTNER, Judge.

This appeal arises from a condemnation proceeding instituted by the state highway commission to take property in St. Louis County, Missouri. The condemnation commissioners awarded the property owner $225,000. The highway commission filed exceptions which were tried to a jury. The jury reduced the condemnation award to

$30,000. The property owner and the first and second lien holders have appealed. We affirm in part and reverse in part.

Respondent Missouri Highway and Transportation Commission (the Highway Commission) brought the condemnation action to take the property of appellant Claude Hanks located at the intersection of highways I–44 and 141. In March 1984, the condemnation commissioners awarded $225,000 to which both the Highway Commission and Hanks filed exceptions. The Highway Commission deposited the award in the circuit court, and in April 1984, Hanks withdrew the $225,000 from the court registry. The check was issued payable to Hanks, Ellisville Metro Bank (now Mark Twain Bank), Fortis M. Lawder, Trustee, South Side National Bank, and Fred Brinkop, Jr., Trustee. Hanks, Ellisville Metro Bank, and Brinkop endorsed the check which was then delivered to South Side. South Side made five disbursements from the $225,000 check: $19,942.80 to Mark Twain (formerly Ellisville Metro Bank) to pay off a first deed of trust on the condemned property; $124,825.95 to South Side to pay off a second deed of trust on the condemned property; $5,571.61 to South Side to pay off an unsecured debt of Hanks; $2,023.01 to South Side for another unsecured debt of Hanks; and the remaining $72,636.63 deposited into a money market account of Hanks at South Side.

In March 1988, the exceptions filed by the Highway Commission and Hanks proceeded to a jury trial. Neither Mark Twain nor South Side participated in the trial. The jury returned a verdict awarding Hanks, Mark Twain and South Side $30,000 for the property, $195,000 less than the condemnation commissioners' award. On April 5, 1988, the circuit court entered judgment on the verdict and ordered Hanks, Mark Twain and South Side to refund the $195,000 and $46,670 in interest. Appellants appealed and this court remanded to the circuit court to determine the respective liabilities of Hanks, Mark Twain

and South Side to the Highway Commission. The court apportioned the $241,670 deficiency judgment as follows: Mark Twain—$21,411.96 (8.86%); South Side—$142,222.79 (58.85%); and Hanks—$78,011.08 (32.28%).[1]

Hanks raises six issues in his appeal. Hanks first argues that the trial court erred in excluding two proposed witnesses of Hanks. Hanks intended to call Tom Ward and Jim Kell as witnesses. Both are landowners and city officials in Peerless Park, where the property is located. The trial court excluded them from testifying upon the objection of the Highway Commission. The Highway Commission objected because Hanks listed Kell and Ward as experts to be called at trial, but failed to inform the Highway Commission until the Friday before the Monday trial. Thus, Hanks violated local rule 32.6 which requires disclosure of expert witnesses ten days before the first trial setting. *See also* Rule 56.01(b)(4). Hanks argues that Kell and Ward are not experts and the trial court abused its discretion in disallowing their testimony.

Generally, trial courts are vested with broad discretion in preliminarily deciding whether a witness qualifies as an expert. *State ex rel. Highway Comm'n v. Hovis*, 425 S.W.2d 130, 132 (Mo.1968); *State ex rel. Highway Comm'n v. Reynolds*, 530 S.W.2d 34, 36–37 (Mo.App., K.C.D.1975). In *Northeast Missouri Electric* this court upheld a trial court's ruling that local farmers could testify as experts regarding the value of defendant's land being taken. *Northeast Missouri Electric Power Loop v. Cary*, 485 S.W.2d 862, 867–68 (Mo.App., St.L.D.1972).

We also note that Hanks listed both Kell and Ward as experts in his amended interrogatories. Furthermore, in his offer of proof Hanks referred to Kell as an expert. Certainly the trial court was within its discretion to preliminarily conclude that Kell and Ward were experts and exclude their

---

1. We note that the judgments entered against appellants total $241,644.87, $24.17 less than the $241,670 deficiency judgment. The discrepancy is accounted for by the fact that in computing the percentage of the original commissioners' award each appellant received, the court rounded to two decimal places. Thus the percentages add up to 99.99%.

testimony when their identities were revealed only one working day before trial. *Ellis v. Union Electric,* 729 S.W.2d 71, 73–75 (Mo.App., E.D.1987); *See also State ex rel. Highway & Trans. Comm'n v. Pully,* 737 S.W.2d 241, 245 (Mo.App., W.D. 1987). Point denied.

■ In his second point, Hanks argues that the trial court erred in failing to sustain his motion to dismiss for failure to prosecute. The condemnation commissioners made their award in March 1984. The Highway Commission made their first request for discovery in July 1987. The jury trial was held in March 1988. Hanks argues that the Highway Commission failed to prosecute its exceptions to the Commissioner's award with reasonable diligence.

■ The trial court has broad discretion in determining whether to dismiss for failure to prosecute and its ruling will be disturbed only for an abuse of that discretion. *State ex rel. Highway Comm'n v. Graeler,* 495 S.W.2d 741, 743 (Mo.App., St.L.D.1973). Courts have dismissed for failure to prosecute for delays of ten, ten and one-half, and twelve years. *State ex rel. Highway and Trans. Comm'n v. Kersey,* 663 S.W.2d 364, 367–68 (Mo.App., W.D.1983) (delays of ten and one-half and twelve years deemed unreasonable); *State ex rel. Highway Comm'n v. Manley,* 549 S.W.2d 533, 534 (Mo.App., St.L.D.1977) (ten year delay unreasonable). However, the circumstances attendant to the delay may be such that the landowner has acquiesced or participated in continuing the proceedings. *State ex rel. Highway Comm'n v. Gould,* 592 S.W.2d 172, 175–76 (Mo.App., W.D.1979) (delay of ten and one-half years not unreasonable delay).

In the case before us, the court noted at trial that because of a recent change in the docketing system of the circuit court, the case came up for a first setting in September 1987. The cause was set for trial in October 1987, but the parties had not completed discovery. The Highway Commission requested and obtained a continuance to March 1988. The trial occurred at the second setting. The trial court found no undue delay. The record before us reveals no lack of diligence sufficient to justify dismissal. Under the circumstances, we find no abuse of discretion. *Gould,* 592 S.W.2d at 175. Point denied.

■ Hanks next argues that the trial court erred in allowing the Highway Commission to present to the jury a photograph of the property in its condition at the time of trial. Hanks asserts that the photograph misrepresented the condition of the property at the time of the taking. Many changes occurred in the property from the time of the taking to the time that the photo was taken. Hanks argues that these changes were not adequately explained thereby misleading and confusing the jury.

As Hanks points out, a photograph of a location taken after an event or occurrence may be introduced as long as any changes are adequately explained. *State ex rel. Highway Comm'n v. Eilers,* 406 S.W.2d 567, 570–71 (Mo.1966). *Mac–Fab Products v. BiState Dev. Agency,* 726 S.W.2d 815, 818 (Mo.App., E.D.1987). The record reveals that the Highway Commission introduced the photograph and stated that the photograph depicted the property as of the date of trial, not the date of the taking. On cross-examination of the Highway Commission's expert, Hanks elicited testimony that the photograph did not depict the property as it stood at the time of the taking. We believe the testimony at trial adequately informed the jury that the property had changed subsequent to the taking. Point denied.

■ Hanks next argues the trial court erred in allowing the Highway Commission to introduce an aerial photograph of the condemned property and the surrounding area. Hanks asserts that the photograph included a nearby landfill which had no relevance to any issue in the case, thus confusing and misleading the jury.

■ A trial court's rulings on matters of relevancy will not be disturbed absent a clear showing of prejudice to the complaining party and an abuse of discretion by the trial court. *Nelson v. State ex rel. Highway & Trans. Comm'n,* 734 S.W.2d 521, 524 (Mo.App., E.D.1987). The landfill's af-

fect on the value of the property was discussed at trial, therefore the photograph of the landfill depicting the condemned property's proximity was relevant as to the issue of value. We find no abuse of discretion in the trial court's ruling. Point denied.

In his next point, Hanks argues that the Highway Commission's expert used an incorrect method of valuation in assessing the damages sustained by the taking. The proper method of computing the property owner's damages is set forth in *State ex rel. Highway Comm'n v. Nickerson*, 578 S.W.2d 916, 917 (Mo. banc 1979). The property owner's damages are measured by the difference between the fair market value of the entire tract before the date of taking and the fair market value of the property remaining after the taking. *Id.* at 917. The Highway Commission's expert, in fact, used this method in concluding that the damages arising from the taking totaled $10,000. The expert independently valued the property taken and the remaining property in determining the pre-taking value of the entire tract. In his opinion the property taken was commercial in nature and worth $4.00 per square foot. He believed that the highest and best use of the remaining property at the time of the taking was industrial and that it was worth $1.00 per square foot. He placed a total value on the entire property of $220,000 before the taking. He went on to testify that the taking changed the highest and best use of the remaining property from industrial to the more valuable commercial because the remaining property would adjoin an access road after the Highway Department completed the improvements. Thus, he believed the taking increased the value of the remaining property from $1.00 per square foot, or approximately $84,000, to $210,000.[2] Using the method set forth in *Nickerson* the expert concluded that the damages were $10,000 ($220,000 less $210,000).

Hanks presented evidence which contradicted the Highway Commission's expert's testimony. Hank's expert used the same valuation method, however, he believed that the taking had no effect on the value of the remaining property. Therefore, while the parties presented conflicting evidence as to value, they each used the prescribed method of valuation. Point denied.

In his final point, Hanks argues that the trial court erred in overruling his motion for a judgment notwithstanding the verdict. Hanks asserts that the jury's verdict was against the weight of the credible evidence. Hanks further argues that the Highway Commission's expert's testimony was based upon the improper factual assumption that the highest and best use of the property was industrial. We initially note that this statement erroneously summarizes the Highway Commission's expert's testimony. He testified that the highest and best use of one segment of the property was commercial and the remaining part was industrial. Secondly, Hanks did not object to this testimony, therefore he has failed to preserve this issue for review.

In any event the testimony at trial regarding damages ranged from $10,000 to $302,000. The jury's $30,000 verdict was within the range of competent evidence and should not be disturbed. *State ex rel. Highway Comm'n v. Kemper*, 542 S.W.2d 798, 803 (Mo.App., St.L.D.1976). A judgment in a condemnation proceeding should not be disturbed because of a disparity in the testimony of witnesses or a seeming preponderance of the evidence one way or another. *State ex rel. Highway Comm'n v. Hamel*, 404 S.W.2d 736, 739 (Mo.1966). The jury's verdict was supported by competent and substantial evidence. *Id.* at 738. Point denied.

We next address appellant South Side's appeal. South Side asserts that a summons was never issued or served upon South Side National Bank. South Side argues that the trial court lacked in person-

---

2. Hanks sold the remaining property a year and five months after the taking to Kell for $190,000. Kell sold the property three months after that for $210,000. The expert believed the $210,000 price more accurately reflected the value of the land.

am jurisdiction and the judgment against it is void. We agree.

In its condemnation petition the Highway Commission named "SOUTHSIDE NATIONAL BANK, a corporation" and "FRED BRINKOP, JR., Trustee" as defendants. Brinkop was an officer at South Side and the trustee on a second deed of trust which secured a promissory note of Hanks held by South Side. The circuit clerk issued a summons to Brinkop which was served on Brinkop at South Side. The summons named Brinkop only. It did not name Brinkop as an agent, officer or representative of South Side. Since Brinkop was named as an individual defendant in the suit, the face of the summons indicates nothing other than Brinkop being sued as an individual, presumably in his capacity as trustee on the second deed of trust. The clerk did not issue a summons in the name of South Side National Bank.

"A summons is process." *State ex rel. Minihan v. Aronson*, 350 Mo. 309, 165 S.W.2d 404, 407 (Mo.1942). It gives a defendant notice and subjects him to the jurisdiction of the court from which it issues. *Id.* The court has no authority to proceed unless service is accomplished in the manner provided by law. *Id.*; *Kohlbusch v. Eberwein*, 642 S.W.2d 683, 685 (Mo.App., E.D.1982). The record reveals that no summons was issued in the name of South Side National Bank, therefore the court was without jurisdiction to proceed against South Side.

The Highway Commission argues that service on Brinkop, an officer of South Side, and the acceptance by South Side of a portion of the commissioners' award operated as an entry of general appearance in the action. We initially note that service on Brinkop did not constitute service on South Side. Brinkop was an individually named defendant. The summons on its face and return of service reveal nothing other than Brinkop being served as an individually named defendant. Service on Brinkop under these circumstances has no bearing on whether the court had jurisdiction over South Side.

We recognize the proposition that the withdrawal of a commissioner's award from the court registry generally estops a party from challenging the proceedings occurring prior to the withdrawal. *State ex rel. Highway Comm'n v. Davidson*, 621 S.W.2d 126, 126 (Mo.App., W.D. 1981). Although South Side was a payee on the check issued by the court, South Side did not withdraw the funds from the court. Rather Hanks moved to withdraw the funds which were then disbursed to South Side. Thus we cannot say that this rule estops South Side from challenging the court's jurisdiction.

We conclude that neither service on Brinkop or South Side's acceptance of part of the proceeds of the award conferred jurisdiction over South Side. Thus, the judgment against South Side is vacated.

In its appeal, appellant Mark Twain asserts that the trial court erred in ordering it to pay the Highway Commission a portion of the difference between the commissioners' condemnation award and the jury's condemnation award. Mark Twain argues that as the holder of a first deed of trust on the condemned property, the condemnation proceeds it received are exempted from the refund pursuant to RSMo § 523.053.3 (1986). Section 523.-053.3 provides in part:

> [W]hen the determinable interest of any defendant is not related to the difference in the value of the property before and after the taking by condemnation, such share set out in the agreement or the court's finding thereof shall not be affected by any increase or reduction so long as the final award is not less than such interest.

There is no dispute that Mark Twain had a lien pursuant to a first deed of trust on the condemned property, a determinable interest. Said determinable interest of Mark Twain was not related to the difference in the value of the property before and after the taking because the subject of Mark Twain's lien, the condemned property, was substituted by the proceeds of the condemnation. *See Morgan v. Willman*, 318 Mo. 151, 1 S.W.2d 193, 199–200 (1927). Section

523.053.3 provides that such a determinable interest shall not be affected by a jury's reduction of a commissioners' award so long as the final award is not less than said interest. Mark Twain's interest was $19,-953.04, less than the $30,000 final award. Therefore, pursuant to the statute, Mark Twain's share of the condemnation award should not have been affected by the jury's reduction of the condemnation award. The trial court's order of deficiency judgment against Mark Twain is also vacated.

Having considered each of the appellants' allegations of error, the jury's condemnation award is affirmed, the judgment against South Side is vacated, the order of deficiency judgment against Mark Twain is vacated, the cause is remanded with directions for the trial court to apportion the deficiency judgment 100% against Hanks.

GRIMM, P.J., and KAROHL, J., concur.