## CHICAGO *v*. TEBBETTS.

1. A., to secure an indebtedness to B., conveyed to C., in trust, certain lands in the city of Chicago, which were subsequently condemned for a street. B. permitted the city to take possession of them and make the improvements, but with the express reservation and condition that he thereby waived no right against A. or the city. The city paid A. his proportion of the award, and issued to him a voucher showing the amount awarded, the payment made, and the balance still due. A. delivered to C. this voucher, and indorsed thereon an order to pay the balance to him, as trustee for B., in full of principal due for lien on the land. The city paid C. but a part of the sum due on the voucher, and C., pursuant to a power contained in the deed of trust, sold the lands at public auction to B., who conveyed them to D. The voucher was thereupon assigned to D., it being agreed that he should have all the rights therein of B. and C. *Held*, that D. is entitled to a decree against the city for the balance remaining unpaid on the voucher, with interest thereon from the time it became due.

2. A party guilty of unreasonable and vexatious delay in making payment of a just claim cannot be relieved by offering to pay interest from the time when the delay began to be unreasonable and vexatious.

APPEAL from the Circuit Court of the United States for the Northern District of Illinois.

James D. Bruner, the owner of certain premises in the city of Chicago, conveyed them by two deeds of trust bearing date July 10, 1866, and June 12, 1867, respectively, to Levi D. Boone, as trustee, to secure to the Union Mutual Life Insurance Company the payment of two notes, one for $10,000 and one for $8,000. On Sept. 9, 1867, Bruner conveyed the premises to Charles A. Gregory, subject to the outstanding indebtedness. Dec. 12, 1867, $2,000 with interest was paid on the $8,000 note.

The city council having, May 25, 1868, passed an ordinance for the extension of Dearborn Street, it became necessary to take the premises for that purpose. Condemnation proceedings were had accordingly, and the damages assessed at $36,000. The city paid Gregory, March 22, 1869, $20,000, and on the early part of the following May issued to him a voucher for $16,000, which he, on the eighteenth day of that month, assigned to Boone as trustee and general agent of the company, as collateral security for the payment of the notes.

Certain property-holders who had a large pecuniary interest

in the opening of the street stipulated, in writing, that if Boone would take no steps to prevent the city from immediately occupying the land and defer enforcing the collection of the notes, they would pay the company interest semi-annually on the said sum of $16,000, or on so much thereof as should remain unpaid. It was stipulated that Boone and the company did not thereby "waive or abandon any right they might have on said notes against the maker thereof, or any right of suit against the said city for the recovery of said money, or any right of entry or possession of said land."

On June 1, 1869, the city, with the consent of the company, entered upon the land, and has since that date kept and used it for a public street. On June 5 the city paid Boone $6,000, which, with the $2,000 before referred to, paid the $8,000 note.

It is admitted by stipulation that the city, after the execution of the agreement, had knowledge thereof, and, but for such knowledge, would not then have taken possession of the premises; also, that it had only paid $26,000 on account of the damages awarded.

Neither the balance due on the voucher nor the $10,000 note having been paid, Boone, as trustee, pursuant to the power of sale contained in the deed of trust, sold the premises at public auction to the insurance company, and executed to it a conveyance therefor. The company conveyed, Dec. 27, 1872, to William C. Tebbetts, a citizen of Massachusetts, the premises, together with any claim which it had either against the city or Bruner. At the same time Boone, as trustee and general agent of the company, indorsed and delivered to him the voucher of the city. Failing to obtain payment thereof, Tebbetts, in November, 1873, brought ejectment against the city, but dismissed his action before judgment.

In June, 1877, Tebbetts filed his bill against the city to compel the payment of the balance due on the voucher.

The court below decreed in his favor for the $10,000 due on the voucher, together with interest at six per cent per annum from Jan. 1, 1870.

The city thereupon appealed to this court.

*Mr. William C. Goudy* for the appellant.

*Mr. W. B. Wilson* and *Mr. George Payson,* contra.

MR. JUSTICE BRADLEY delivered the opinion of the court.

The decree in this case must be affirmed. The grounds taken by the appellant for resisting payment of the $10,000 due on the note given by Bruner to the insurance company, and secured by the trust deed given to Boone, are quite remarkable. It is conceded that the land embraced in the deed was regularly condemned for a street in 1868, and assessed at $36,000, without any deduction for benefits; and that no one was interested in it except Gregory, the owner of the fee, and Boone, as trustee for the insurance company, who held two deeds of trust thereon to secure two several notes for money loaned, — one for $10,000, before referred to, and one for a balance of $6,000. On March 22, 1869, the city paid Gregory, the owner of the equity of redemption, his proportion of the award, namely, $20,000, and on the 14th of May following the board of public works of the city gave him a voucher, showing the amount of the award, the payment made to him, and the balance still due, namely, $16,000, being the amount due to the insurance company and secured by the deeds of trust. This voucher Gregory indorsed with an order to pay the said balance to Boone as trustee of the insurance company in full of principal due said company for lien on the land, and delivered the same to him. Boone thereupon made demand on the city for this balance. On May 21, 1869, the city authorities gave notice that the assessments had been collected, and that the money was ready in the hands of the city treasurer to be paid over to the parties entitled; and on the 5th of June they paid to Boone, the trustee, $6,000, which he applied to the note on which that amount was due, which was sufficient to cancel the same. The balance of $10,000, though frequently demanded, was never paid, and this suit was brought by the appellee as assignee of the company, to recover the money or the land.

That it was the intent of the parties that Gregory should, and that they supposed he did, transfer to the company all claim to the balance of the award made for the land, over and above the $20,000 received by himself as owner of the equity of redemption, there cannot be the slightest doubt. The mortgagee was entitled to it, and it was the owner's duty to make

the assignment, if any assignment was necessary; and it was, in fact, made, or supposed to be made, by the indorsement of the voucher to the trustee. It was sufficiently made to vest in the company, or its trustee, the entire equitable interest in the money and in such security for its payment as yet remained; and it was manifestly the duty of the city to pay it accordingly.

But, notwithstanding the notice to that effect, it seems that the city did not, at the time, have in hand the requisite funds to pay the last $10,000. The company, however, on receiving guaranties from other parties, who were interested in the street, that the interest should be paid at all events (there being some doubt whether the city would be liable for interest), consented to let the city take possession and go on with the improvement; but with the express reservation and condition that such consent was not to be a waiver or abandonment of any right against the debtor, or any right of suit against the city for the recovery of the money or the land. This indulgence on the part of the insurance company has been the prime cause of all the trouble experienced by it and its assignee (the present appellee) in collecting the said $10,000. It is conceded that he has never received his money; that the city has the land, and claims the right to keep it for the purposes of the street; that the assessed value was sufficient to pay this claim over and above what was due to others; and that the company was entitled to the money in 1869. Payment, however, is resisted, so far as we can understand the defence, on the ground that the company, being unable to get its money, treated the land as still subject to its claim, and directed its trustee to advertise and sell the same by way of foreclosure, and bid it in at such sale for the amount of the demand. This, the appellant contends, satisfied the debt. But the city still claimed the land, and resisted every attempt of the company to get possession of it. Actions of ejectment were brought, but were strenuously defended, and the company was forced to abandon them. The counsel for the city contended then, as they contend now, that by virtue of the condemnation proceedings all interests and titles in the land were condemned, as well that of the trustee under the trust

deeds, as that of the owner of the fee. Hence their argument on this branch of the case is, that the proceedings for foreclosing the trust deed were illusory and vain. Therefore the company acquired no title by the foreclosure and sale, and its assignee, the appellee, has none.

It is thus supposed to be conclusively reasoned out, upon the soundest principles of logic, first, that the debt is satisfied by the foreclosure and purchase of the land; and, secondly, that all claim to the land was extinguished by the proceedings for condemnation. If this argument is sound, the appellee certainly has not a particle of ground to stand on. His debt is gone because he has got the security; and the security is gone because it was taken for the street; and yet the company, or its assignee, has not received a cent of money, nor any other consideration whatever.

When, by a train of abstract reasoning, we are brought to an absurd conclusion, it behooves us carefully to reconsider the steps by which we have been led up to it. If the last conclusion of the appellant is well founded, namely, that there was nothing left for the deed of trust to operate upon, and that the proceedings in foreclosure were indeed illusory and vain, the first conclusion, that the debt was satisfied by the form of sale which was gone through in such proceedings, cannot be true.

It is admitted on all hands that the proceedings for condemning the land for a street were duly and properly pursued, and that the company waived its right to oppose the taking possession thereof by the city before payment of the assessment. The courts were probably right in holding, in the actions of ejectment which have been referred to, that the city could not be dispossessed. But as the company, when permitting the possession to be taken, reserved all its rights for the recovery of the money yet due, and as it is conceded that the city has not paid that money, it is surely against good conscience and every principle of equity to refuse to pay it. We think, therefore, that the company, or its assignee, standing in the position of mortgagee of the land, or, which is the same thing, as *cestui que trust* under the trust deed, and afterwards as assignee of the balance due on the award, had a clear

ground of equity for filing the bill in this cause, and is entitled to a decree.

The question of interest has been largely discussed by counsel. But in our view of the matter it needs but little consideration. It has been the express statute law of Illinois, at least ever since 1845, that interest at the rate of six per cent per annum shall be allowed " on money withheld by an unreasonable and vexatious delay of payment." We have no hesitation in declaring that this is such a case. It is now more than twelve years since the property was condemned. The money has been due, and ought to have been paid long ago. It was the duty of the city to provide for its payment. Instead of that, it has litigated and contested the demand year after year, and in court after court.

It is unnecessary to make a minute examination of the statute law for ascertaining the days and times when, in the due course of proceeding, the money might have been collected from the owners of property benefited by the street. It is manifest that it might have been collected long before the commencement of this suit. But a party guilty of unreasonable and vexatious delay in making payment of a just claim cannot be relieved by offering to pay interest from the time when the delay began to be unreasonable and vexatious. If he is guilty of such delay, he is chargeable with interest on the debt from the time it became due as upon other debts enumerated in the law. We see nothing to criticise in the amount of interest allowed by the court below.

*Decree-affirmed.*