## ABRAHAM v. CASEY.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 62. Submitted November 2, 1900.—Decided December 3, 1900

The conclusions in this case of the Supreme Court of Louisiana depended alone upon an interpretation of the local law of the State governing the sale, the record of title to real estate, and the nature, under the local law, of the rights of a mortgagee creditor; and, accepting the rule of property under the law of that State to be as so announced, the proceedings in the equity cause were not *res judicata*, and the *lis pendens* created by that suit did not prevent the exercise by Maxwell of his right to foreclose his mortgage, and the title which he acquired in the foreclosure proceedings was not impaired by the pendency of that suit.

A STATEMENT somewhat in detail of the admitted facts concerning this protracted and involved litigation is essential in order to simplify and make clear the issues which arise for decision on this record.

Jean Baptiste Cavailhez, a native of France, took up his residence about 1849 in what is now known as the parish of Vermilion, Louisiana. He married Earnestine Diaz, and they there lived together as man and wife, where a daughter, Marcelline, was born. In 1862 Cavailhez purchased a plantation and his title was recorded, and on the 19th of August, 1869, Cavailhez sold to Clarke H. Remick the plantation which Cavailhez had acquired, as aforestated. The consideration was $15,000, $7000 of which was evidenced by a note of the purchaser, Remick, for that amount, payable on demand to bearer, and bearing 8 per cent interest from a stated date. The remainder of the price, $8000, was evidenced by four notes for $2000 each, maturing at one, two, three and four years from date, bearing 8 per cent interest from their date until paid. The payment of the five notes was secured by mortgage upon the property.

On the day the foregoing act of sale was passed, (the 19th of August, 1869,) in view of a marriage contemplated to take place between Clarke H. Remick and Marcelline Cavailhez, a marriage

contract was entered into between them, determining, as allowed by the laws of Louisiana, the rules which should govern the property relations of the prospective spouses during the existence of the proposed marriage. Jean B. Cavailhez and his wife, Earnestine Diaz, became parties to the contract, and gave to their daughter Marcelline, as her separate property, the note for $7000, which had been furnished by Remick, who became responsible for the amount thereof to his intended wife as her paraphernal property. Both the act of sale to Remick from Cavailhez and the marriage contract were duly recorded. Earnestine Diaz, the reputed wife of Cavailhez, died some time before 1882. Cavailhez died in 1882, and Remick, the son-in-law, died shortly afterwards in the same year. Remick left surviving his widow, Marcelline, and four minor children. His succession was duly opened in the probate court having jurisdiction, in May, 1882. His widow, Marcelline, qualified as tutrix of the children, and after due proceedings the plantation which Remick had bought of Cavailhez was, at auction, sold by decree of the probate court, and was bought by the widow. The proceeds arising from the probate sale were accounted for in the probate court. The title by which Mrs. Remick thus acquired the plantation was also duly recorded.

On the 22d day of August, 1883, Mrs. Remick, having become indebted to A. G. Maxwell, mortgaged the plantation which had been acquired by her as above stated to secure the Maxwell debt, which was evidenced by two notes, amounting in the aggregate to $3483.50, which notes were described in the act of mortgage which was recorded.

On the 5th of March, 1884, Jeanne Caroline Cavé, alleging herself to be a citizen of France, filed her bill of complaint in the Circuit Court of the United States for the Western District of Louisiana, in which she in substance averred that she was the lawful wife of Jean B. Cavailhez, to whom she had been married in France in 1833; that Cavailhez had deserted her, had come to the State of Louisiana, and there unlawfully married and lived with Earnestine Diaz as his wife; that by the marriage relation which existed between complainant and Cavailhez it resulted that all the property acquired by him, during his resi-

dence in Louisiana was community property, of which she was the one-half owner. It was further alleged that at the time Cavailhez deserted her in France he had in his possession separate funds which he had received from her, and that she was entitled to be secured for the repayment of such funds by a legal mortgage upon the undivided portion of the community property belonging to the husband. The death of Cavailhez and of Earnestine Diaz, his reputed wife, was stated. The sale of the plantation to Remick, the marriage contract, the death of Remick and the purchase of the plantation by Mrs. Remick at probate sale, were all alleged, and the averment was made that both Remick and his surviving wife were fully cognizant that the complainant was the lawful wife of Cavailhez, and that all the parties, Cavailhez, Earnestine Diaz, Remick and the daughter Marcelline, had conspired for the purpose of concocting the sale to Remick and the marriage contract as an efficacious means of depriving complainant of her share in the community as the lawful wife of Cavailhez. The sole defendant to the bill was Marcelline Cavailhez, the widow of Remick, not only individually, but also as tutrix of her minor children, and as such administering the estate of her deceased husband. The prayer of the bill was " that said acts of sale and marriage contract . . . be decreed null and void; that your oratrix be recognized as the widow of said Baptiste Cavailhez and his lawful wife up to the date of his death; that the marriage between said Baptiste Cavailhez and Earnestine Diaz, both now deceased, be decreed absolutely null; that the aforesaid . . . plantation be decreed to be still the property of the estate of Baptiste Cavailhez; that your oratrix be recognized as the owner of one undivided half of said . . . plantation; that she be recognized as a mortgage creditor of said Baptiste Cavailhez in the sum of $5310, with interest from judicial demand, on the undivided half thereof belonging to said Baptiste Cavailhez."

Mrs. Marcelline Remick answered, both in her capacity as tutrix and individually. She averred the validity of the marriage of her father and mother; charged that even if the previous marriage between the complainant and Cavailhez had taken place as alleged in the bill, the good faith of her mother, Earn-

estine Diaz, rendered the marriage lawful as to her and her issue. The alleged fraud in the sale of the plantation and the marriage contract was denied. It was moreover averred that her husband Remick, during his lifetime, had expended a considerable amount of money in improving the plantation, and that if the complainant was entitled to the relief which she sought she was in equity bound to pay the value of such improvements.

Whilst this suit was pending in the Circuit Court of the United States the notes held by Maxwell, and which were secured by mortgage as already stated, became due. Maxwell thereupon commenced on May 25, 1885, in the state court having jurisdiction, foreclosure proceedings according to the forms provided by the laws of Louisiana, Mrs. Marcelline Remick, individually and as tutrix, being made the defendant. Under a decree of sale on the 8th of July, 1885, the plantation was sold, and was bought conjointly by Laurent Laccassagne and Maxwell. The formal deed of the sheriff to them was regularly executed and recorded. On the 22d day of October, 1885, Maxwell conveyed to Laccassagne his undivided half of the property thus purchased. Thereafter, on the 11th of January, 1886, the equity cause which was pending at the time of the sale just mentioned in the Circuit Court of the United States, was decided in favor of the complainant, the decree substantially awarding all the prayers of the bill. It declared complainant to be the lawful wife of Cavailhez, and that the sale made by him to Remick was void; that the marriage contract between Remick and Marcelline Cavailhez was likewise void, and therefore that one half of the property belonging to Cavailhez at the time of his death was owned by the complainant as his widow in community, and that the other half was liable to pay the amount which the complainant had asserted in her bill to be, the sum of her separate property received by her husband. The decree, however, recognized in part the right of the defendant to recover for the value of the improvements which had been put by Remick upon the plantation. A writ of possession was issued to enforce this decree, it being immaterial for the purposes of the case to ascertain what was done in execution of the writ. The complainant in the equity suit, Jeanne C. Cavé, after the decree in her favor,

died in 1886, leaving a will, in which she instituted Francois Chapuis, a citizen of Switzerland, her universal residuary legatee, and appointed him her executor. Her estate was opened, and in the probate proceedings Chapuis was appointed as executor, and was recognized as universal legatee.

On April the 15th, 1886, Laurent Laccassagne,[1] averring himself to be a citizen of France, filed his bill in the Circuit Court of the United States for the Western District of Louisiana against Francois Chapuis individually, and as universal legatee of Jeanne C. Cavé, and as her executor. The bill alleged the ownership of the complainant of the plantation which had been bought in the Maxwell foreclosure. It averred the decree in the equity cause in favor of Mrs. Jeanne C. Cavé, the fact of her death, and that Chapuis was her executor, and had succeeded to her rights as her universal legatee; it alleged a disturbance of the possession of the complainant by a writ of possession issued to enforce the decree. He, moreover, averred that the court was without jurisdiction to render the decree, because Mrs. Jeanne C. Cavé, the complainant, had falsely represented herself to be a citizen of France, when in fact she was a citizen of the State of Louisiana; it charged that the decree was inoperative as to Laccassagne, because his rights were not involved in the controversy. The prayer was that the decree be vacated; that Chapuis be perpetually enjoined from enforcing it. Chapuis demurred to the bill, first, for want of jurisdiction, because both himself and the complainant were aliens, and, second, because of a want of equity. A restraining order issued which, after hearing, was set aside, and a final decree was ultimately entered, maintaining the demurrers and dismissing the bill. From this decree Laccassagne appealed to this court.

Pending the appeal just referred to, Chapuis, having become indebted to the commercial firm of H. Abraham & Son, mortgaged the undivided half of the plantation, which had been acquired by him as above stated. He also, in the same act of

---

[1] In *Lacassagne* v. *Chapuis*, 144 U. S. 119, as also in the records sent up with this case from the court below, *Lacassagne* is spelled with one "*c*"; but in the opinion in this case it is changed as shown.

mortgage, transferred to Abraham & Son, as security for the debt due that firm, the claim against the other undivided half of the plantation, which had been allowed Mrs. Jeanne C. Cavé, the complainant in the equity cause. He moreover thereafter caused probate proceedings to be had as to the estate of Jean Baptiste Cavailhez, provoked a sale under the order of the probate court to pay the debts of the estate, and at such sale bought the undivided half of the plantation, which it was assumed belonged to Cavailhez, in accordance with the decree in the equity cause.

In March, 1892, the appeal pending in this court in the case of *Lacassagne* v. *Chapuis*, was here decided. The decree of the lower court which dismissed the bill absolutely was "so modified as to declare that it is without prejudice to an action at law, and, as so modified, it is affirmed with costs."

The debt due to Abraham & Son, which Chapuis had secured by the mortgage and transfer, as above stated, matured, and that firm commenced in February, 1893, proceedings in the state court having jurisdiction, to foreclose the mortgage. Thereupon Laurent Laccassagne, in May, 1893, filed his petition in the Seventeenth Judicial District Court in and for Vermilion Parish, Louisiana, against Chapuis and Abraham & Son. He alleged his ownership of the property in virtue of the Maxwell foreclosure and his purchase from Maxwell; he charged that the decree in the original Cavé suit in the Circuit Court of the United States was *res inter alios acta* as to him; that it was void because of a want of jurisdiction growing out of the fact that both parties to the cause were citizens and residents in the State of Louisiana; that the mortgage of Abraham & Son was worth nothing because of the want of title in Chapuis, and prayed that Abraham & Son be perpetually enjoined from enforcing their mortgage against the plantation, and that they with Chapuis or his successors in right be forever restrained from disputing the ownership of the petitioner. Both Abraham & Son and Chapuis excepted on the ground of *res adjudicata* arising from the decree of the Circuit Court of the United States rendered in the suit of Mrs. Cavé, and by a further exception of estoppel alleged also to have arisen from the decrees in said

cause, based on the ground that the foreclosure proceedings of
Maxwell had been commenced whilst the original equity cause
suit was pending. The trial court sustained both exceptions,
refused the injunction, and dismissed the petition of Laccassagne.
An appeal was taken by Laccassagne to the Supreme Court of
the State of Louisiana. In that court the judgment below was
reversed, and the case was remanded to the trial court with di-
rections to hear the cause on its merits.

Laccassagne thereupon amended his pleadings, the parties
defendant answered, various substitutions of persons took place,
caused by the death of necessary parties; interventions were
filed, and other proceedings were had, which were confusing
and conflicting, and need not be referred to, except to say that
the decree of this court in *Lacassagne* v. *Chapuis* was pleaded as
an additional ground for the claim of *res adjudicata* and estoppel.
Suffice it to say that, when the issues were finally made up, the
cause was decided by the trial court against Laccassagne. He
again prosecuted an appeal to the Supreme Court of the State
of Louisiana, and the judgment of the trial court was reversed.
The court finally disposed of the cause by decreeing the validity
of the Maxwell foreclosure sale and the purchase thereunder,
and ordered an injunction restraining Chapuis or his successors
and representatives, including Abrahams & Co., from interfer-
ing with Laccassagne as the owner of the property. To such de-
cree this writ of error is prosecuted.

*Mr. William A. Maury, Mr. Albert Voorhies* and *Mr. W. O.
Hart* for plaintiffs in error.

*Mr. W. S. Benedict* for defendant in error.

MR. JUSTICE WHITE, after making the foregoing statement,
delivered the opinion of the court.

The Federal questions raised by the assignment of errors are
that the court below refused to give due faith and credit to the
decree of the Circuit Court of the United States for the West-

ern District of Louisiana and to the decree of this court in the case of *Lacassagne* v. *Chapuis*, 144 U. S. 119.

To determine whether these contentions are well founded, the exact ground upon which the court below predicated its conclusion must be ascertained. The court decided that the decree of the Circuit Court of the United States for the Western District of Louisiana was not *res adjudicata* against Laccassagne, because he was not a party to that cause, and as to him, therefore, it was *res inter alios acta*. It further held that the *lis pendens* arising from that cause did not estop Laccassagne, since the title which he held originated prior to the inception of the suit and was wholly independent of the issues which it involved.

These general propositions which the court announced were deduced from the following conclusions, viz: 1. Under the Louisiana law Jean B. Cavailhez, as head and master of the community existing between husband and wife, had the undoubted right to dispose of the community property without the consent of his wife, and therefore the deed made by him to Remick was binding upon the community irrespective of whether Mrs. Cavé, the plaintiff in the equity cause, was or was not his lawful wife. 2. That as to the charge of fraud made conjointly against Cavailhez, his reputed wife Earnestine Diaz, his daughter Marcelline, and the purchaser Remick, such alleged fraud was wholly inefficacious even if established as to them, to affect Maxwell, who had acquired his mortgage whilst the property stood on the public records in the name of Remick by a conveyance from Cavailhez, who had the power to make the title. 3. That the right acquired by Maxwell under his mortgage was, by the Louisiana law, a *quasi* alienation of the property in his favor, taking its origin, it is true, from the date of the mortgage given by Mrs. Remick, but relating back to the recorded title from Cavailhez, which was in every respect, as to Maxwell, unaffected by the issues in the equity suit. 4. That the right thus acquired by Maxwell was an independent one, springing from the undoubted power of Cavailhez to sell and from the state of the public records, on the faith of which Maxwell had the right to rely when he accepted his mortgage. 5. That the

laws of Louisiana forbidding a transfer of property *pendente lite* did not operate to prevent Maxwell from foreclosing his mortgage pending the equity suit, because, although the foreclosure proceedings were filed after such cause was commenced, the right in virtue of which they were initiated arose long anterior to the beginning of the equity suit, and was paramount to and independent of all the controversies which were therein presented for decision.

These conclusions of the state court depended alone upon an interpretation of the local law of the State, governing the sale, the record of title to real estate, and the nature under the local law of the rights of a mortgagee creditor.   48 La. Ann. 1160; 51 La. Ann. 840.   It is the duty of this court to follow the rule announced on such subjects by the highest court of a State. *Clarke* v. *Clarke*, 178 U. S. 186–190, and authorities there cited.

Accepting the rule of property under the Louisiana law to be as announced by the Supreme Court of that State, it is manifest that the proceedings in the equity cause were not *res adjudicata*, and that the *lis pendens* created by that suit did not prevent the exercise by Maxwell of his right to foreclose his mortgage, and therefore the title which he acquired in the foreclosure proceedings was not impaired by the pendency of the suit.   But it is argued although this be undoubted, it is not applicable because of the decree of this court in the case of *Lacassagne* v. *Chapuis*.   In that cause, however, the decree below which dismissed the bill was so modified as to cause it to be "without prejudice to an action at law."   And the court below has expressly decided that the proceeding taken by Laccassagne in the state court, and which is now under review, was the proper method by which he could, according to the Louisiana law, test his legal rights asserted to arise from the Maxwell foreclosure proceedings, and the purchase made thereunder.   It is, however, argued that in the opinion in *Lacassagne* v. *Chapuis* this court upheld a construction of the Louisiana law which is in conflict with that law as construed by the Supreme Court of Louisiana in its opinions in this case, and therefore, it is asserted, this court should apply its previous conclusions as to the law of Louisiana instead of now conforming to the view of the Louisi-

ana law subsequently laid down by the Supreme Court of the State. This court, it is said, by virtue of the appeal in the *Lacassagne* case, was first vested with jurisdiction to consider the Louisiana statute as to *lis pendens*, and therefore, at least, as to the parties to this record, should hold the Louisiana law to be in accord with its previous decision, although by doing so the interpretation of the state law by the Supreme Court of the State be wholly disregarded. But we need not pause to point out the unsoundness of this argument as applied to the question now here, since the premise which the proposition assumes is without foundation. The case of *Lacassagne* v. *Chapuis* came to this court on two demurrers, the one predicated on a want of jurisdiction because both parties were aliens, and the other on an asserted want of equity in the bill. The jurisdictional question as to alienage was disposed of on the ground that the bill was ancillary to the original suit. Whether the other matters alleged were within the cognizance of a court of equity was fully considered, and it was held that the claim of title in Laccassagne furnished no ground for equity jurisdiction. The court observed : " As the plaintiff was evicted and the plantation was put into the possession of the widow Cave, a court of equity cannot give the plaintiff any relief *until he has established his title* · *by an action at law.*" True it is that subsequently, in considering whether the mortgage right of Laccassagne created a cause cognizable in equity, the opinion intimated views of the Louisiana law not in accord with the law of that State, as announced by the Supreme Court of Louisiana as hitherto stated. But the passages referred to were merely reasoning conducive to the demonstration that the rights asserted, in the bill, were cognizable at law only, and therefore not the subject of equitable jurisdiction. That the court did not intend to and did not decide what were the legal rights of Laccassagne is at once demonstrated by the fact that the decree below, which dismissed the bill, was amended so as to cause it to be without prejudice to an action at law, and as thus modified was affirmed. To treat the passages in the opinion, which are relied on as having the conclusive import now in argument attributed to them, would of necessity give rise to the following deduction : The opinion

on the one hand dismissed the question of legal title from consideration because it was not within the province of a court of equity to decide who held the legal title, nevertheless the question of such title was finally disposed of in the cause.

But the premise contended for pushes to a more flagrant contradiction, since it cannot be accepted without admitting that, although the decree was " without prejudice to an action at law," the right to such action was in substance foreclosed.

*Affirmed.*