**SWANSON et al. v. UNITED STATES et al.**
**No. 11131.**

Circuit Court of Appeals, Ninth Circuit.
June 25, 1946.

George W. Young, of Spokane, Wash., for appellant Price.

Lawrence H. Brown and Lloyd E. Gandy, both of Spokane, Wash., for all other appellants.

John T. Raftis, of Colville, Wash., and Harry T. Davenport, of Spokane, Wash., for appellees Spokane Portland Cement Co., and John T. Raftis and Charles E. Bennett.

Before DENMAN, STEPHENS, and BONE, Circuit Judges.

STEPHENS, Circuit Judge.

On November 16, 1942, the United States by eminent domain proceedings acquired title to 340 acres of land out of a 3000-acre tract in the State of Washington. 40 U.S.C.A. § 257 et seq. The sum of $10,000 was deposited with the Clerk of the District Court of Washington, Eastern Division, as the estimated just compensation therefor. Later, a jury assessed the value at $30,000 and the deposit was increased to that sum.

The case is here on appeal from the judgment under the claim that it does not provide for the legal distribution of the compensation paid. The only party appellants named as interested in the issues of this appeal are as follows: The "Swansons," heirs of M. G. Swanson (the mortgagor) and wife, both deceased, assignees of Ella Price, surviving spouse and executrix of the estate of H. G. Price, deceased, who was a partial assignee of J. D. Crary, who was a partial assignee of M. G. Swanson; the Spokane Portland Cement Co., assignee of the Parnell interest; the estate of W. N. Bennett, deceased, assignee of the Parnell interest; and John T. Raftis and Charles E. Bennett as executors of said estate.

Section 258 is applicable and provides that: "The practice, pleadings, forms and modes of proceedings in causes arising under the provisions of section 257 of this title shall conform, as near as may be, to the practice, pleadings, forms and proceedings existing at the time in like causes in the courts of record of the State within which such district court is held, any rule of the court to the contrary notwithstanding." The Washington law, Rem.Rev.Stat. §§ 891–900, provides that eminent domain cases are begun by filing the condemnor's petition, in which the property to be taken is sufficiently described for identification, and the known or reputed owners are named and unknown interests, if any, are made parties defendant.

Contemporaneously with filing the petition the government also filed a declaration of taking on which the usual ex parte judgment was entered vesting title in the United States and requiring prompt delivery of possession unless cause to the contrary should be shown.[1] No such showing has been attempted. Answers have been filed by the owners or reputed owners consenting to the condemnation of the property, but the appellants both as holder of the fee and as heirs of the mortgagor of the condemned land challenged the right of the respondents both as the holder of a sheriff's certificate of sale and as the assignees of the mortgagees, to share in the jury award as compensation for the taking of the 340 acres of the larger tract.

The mesne conveyances and assignments, necessary to a proper distribution of the fund, may be summarized as follows:

W. G. Wrenn, the fee holder, on September 3, 1938, conveyed by warranty deed to M. G. Swanson, who gave a mortgage back to W. G. Wrenn. The mortgage was filed September 10, 1938, in records of Stevens County, Washington.

On December 11, 1941, W. G. Wrenn assigned said mortgage to Richard C. Parnell and Thelma S. Parnell, his wife, and the assignment was duly filed for record.

Parnell and wife, on December 9, 1941,

---

[1] A special procedure is provided by 40 U.S.C.A. § 258a, whereby, without awaiting formal condemnation of the land by a jury of inquisition in judicial proceedings, a special declaration of taking is filed in the case at its inception "by the authority empowered by law to acquire the lands described in the petition, declaring that said lands are thereby taken for the use of the United States." The declaration must state "the sum of money estimated by said acquiring authority to be just compensation for the land taken." When this sum is deposited in court "to the use of the persons entitled thereto," it is followed by an ex parte judgment vesting the property in the United States, "and the right to just compensation for the same shall vest in the persons entitled thereto; and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein." It is further provided by the statute that "Upon the application of the parties in interest, the court may order that the money deposited in the court, or any part thereof, be paid forthwith for or on account of the just compensation to be awarded in said proceeding. * * * The court shall have power to make such orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable."

brought an action to foreclose the mortgage. A money judgment and decree of foreclosure was rendered in said cause on March 13, 1942, in their favor.

On April 22, 1942, a sheriff's sale on foreclosure was held at which sale the Parnells were the purchasers upon their bid of a sum equal to the obligation, and this sale was confirmed on September 18, 1942.

On April 30, 1942, subsequent to the sheriff's sale to them, but prior to confirmation thereof, the Parnells, assignees of the mortgage from Swanson to Wrenn, in writing and for a consideration assigned all their right, title and interest in the sheriff's certificate to W. N. Bennett, on November 11, 1942, in consideration of various sums paid or to be paid, by partial assignment, assigned the portion of the sheriff's certificate covering Tract No. 3 herein (a part of the condemned land) to Spokane Portland Cement Company.

There was no redemption from the foreclosure sale and, at the expiration of a year therefrom and on April 28, 1943, the assignees of the sheriff's certificate, viz., appellees Spokane Portland Cement Company and the W. N. Bennett Estate (Bennett having died), surrendered their respective assigned sheriff's certificates and took sheriff's deeds, to-wit, said Spokane Portland Cement Company to Tract No. 3, and said Bennett's estate to Tract No. 4 and the remainder of the 3000 acres.

On September 5, 1945, Parnell and wife sold and assigned all their interest, if any, in the judgment of foreclosure to Spokane Portland Cement Company, and the matters in controversy between the company and the Bennett estate on the one hand and the Parnells on the other were settled and adjusted at the same time.

It is important to know who were the "owners" of the property at the time of its taking by the government. It is stated in Danforth v. United States, 1939, 308 U.S. 271, 283, 60 S.Ct. 231, 236, 84 L.Ed. 240, that "just compensation is value at the time of taking. * * * For the reason that compensation is due at the time of taking, the owner at that time, not the owner at an earlier or later date, receives the payment. Unless a taking has occurred previously in actuality or by a statutory provision, which fixes the time of taking by an event such as the filing of an action, we are of the view that the taking in a condemnation suit under this statute takes place upon the payment of the money award by the condemnor".

█ It is settled that when a parcel of land is taken by eminent domain, every person having an estate or interest at law or in equity in the land taken is entitled to share in the award. The term "owner" in statutes relating to the exercise of eminent domain includes any person having a legal or equitable interest in the property condemned. A mortgagee of real property sought to be condemned or a mortgagee's assignee or grantee is "owner" or "person interested in property," and as such and to the extent of the interest is entitled to share in the distribution of the compensation judgment. John Hancock Mutual Life Ins. Co. v. Casey, 1 Cir., 1945, 147 F.2d 762; United States v. Bransen, 9 Cir., 1944, 142 F.2d 232; Morse v. Board of Com'rs of Marshall County, 1934, 169 Okl. 600, 38 P.2d 945; Morgan v. Willman, 1927, 318 Mo. 151, 1 S.W.2d 193, 58 A.L.R. 1518.

At the time of the taking the "owners" were legal owner M. G. Swanson, and mortgagees Richard C. Parnell and wife, "equitable owners." The subsequent mesne conveyances by assignment to W. N. Bennett and to Spokane Cement Company would act to subrogate these assignees to the rights of the mortgagee-assignor.

The District Court questioned the validity of the assignments against the Parnells, but they were not set aside and were not challenged by the assignors, nor by the United States.

The questions raised by this appeal grow out of the divergent claims made by the appellants and the mortgage creditors. The appellants claim the entire fund by virtue of their being the legal owners at the time of the taking, while the mortgagees, appellees, claim enough of the fund to liquidate the entire debt secured by the mortgage.

The District Court found both the facts and law in favor of the assignees of the mortgage creditors and awarded them an amount sufficient to satisfy their mortgage

lien with the balance, if any, to the appellants as legal owners.

The holders of the sheriff's certificates, the Bennett estate and the Cement Company, turned in their certificates when the redemption period expired and received the sheriff's deed, and thereby took absolute title to the balance of the tract.

At the trial the appellants attempted to prove a collusive understanding between the assignors and the assignees of the mortgage, but the court found against such claim and also that the assignment was valid until and unless set aside and that the appellees had acted within their legal rights. The District Court in passing upon the questions involved properly treated the appellees as equitable owners. If, therefore, appellees cannot recover the amount due on the mortgage, neither can any one else, other than appellants, the legal owners.

When the appellees became purchasers of the mortgage for value, they acquired whatever security the mortgage gave. If the real estate bound did not pay the mortgage debt, the appellees could proceed for the balance in a personal action on their bond, or, if damages accrued to the owners by reason of the taking of the mortgaged property, the security of the mortgage being thus depreciated, they could follow the fund awarded for the taking to the extent of making good their loss. This is what was done in the present case, but as we shall see the court went too far by awarding the assignees of the mortgagee-purchasers all of the award.

■ The appellants seek to take advantage of a questionable assignment as heretofore referred to between the assignees. We do not see how this controversy, if indeed there is one, can avail to defeat a recovery on the mortgage. The United States does not set up the defense and is not benefited by it. That assignment stands as it did before the present proceedings were instituted. The only question presented on this appeal is whether the claim of the appellees as mortgagees is the claim as an "owner" having the right to participate in the fund for distribution. The District Court found that the appellees have such a right, and we think that the evidence is sufficient to sustain this part of the finding.

Section 203 of Title 31 U.S.C.A. provides that all transfers and assignments of any claim against the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor "shall be absolutely null and void, unless they are freely made and executed * * * after the allowance of such claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof." This statute was passed for the protection of the government and in order that it might not be "embroiled in conflicting claims, with delay and embarrassment and the chance of multiple liability." As said in Martin v. National Surety Company, 1937, 300 U.S. 588, 595, 57 S.Ct. 531, 534, 81 L.Ed. 822, " * * * the Government is not concerned to regulate the equities of claimants growing out of irregular assignments when collection is complete and liability ended."

The contest then remains one between the heirs of M. G. Swanson, the appellants, as legal owners at the commencement of the condemnation proceedings, and the mortgage creditors or rather the appellees as assignees of the mortgage creditors.

The appellants contend that since they held legal title to the tract at the time of the taking, they are entitled to the award subject to satisfaction of any existing lien which in this case is the lien of the assignees of the mortgagee-purchasers. The right of redemption, which remained to the appellants after the foreclosure sale, affected their title only to the extent that it would be extinguished when and if within one year from the mortgage foreclosure they had not redeemed. The appellees contend that the foreclosure sale constituted themselves (assignees of the mortgagee-purchasers) more than lienholders and in effect, the "owners," and therefore entitled to the full award as well as title to the remaining part of the whole tract. Their theory is that the mortgagees' right upon the foreclosure sale has of itself divested appellants of all "ownership" in the property, their right of redemption being no

more than a personal right to repurchase for the amount of the debt. The mortgagor, having failed to redeem, neither he nor his heirs have a valid claim of any kind to either the award or the land. The important fact which the appellees overlook is that the appellants were prevented from redeeming by the government's taking as well as the fact that the distribution must be made in a manner that is "just and equitable."

■ Where a condemnation action is heard in a federal court, the rights and status of the parties to a mortgage, covering real estate at the time of condemnation is determined according to state law. 40 U.S.C.A. § 258a. See II. Abraham & Son v. Casey, 1900, 179 U.S. 210, 21 S. Ct. 88.

■ The federal court has jurisdiction to determine the just compensation for the taking and how much of it should go to the owner and how much to the holder of the lesser estates. United States v. Sunset Cemetery Co., 7 Cir., 1943, 132 F.2d 163, 165. The state law does not control its distribution, notwithstanding any cases cited by the appellees to the contrary. See John Hancock Mutual Life Ins. Co. v. Casey, 1 Cir., 1945, 147 F.2d 762, 766; United States v. Certain Lands, etc., 2 Cir., 1942, 129 F.2d 577, 579; United States v. Certain Parcels of Land, etc., D.C.Md.1942, 46 F.Supp. 441. In John Hancock Mutual Life Ins. Co. v. Casey, supra, 147 F.2d at page 766, the court stated that "This Act of August 1, 1888, 40 U.S.C.A. §§ 257, 258, requires only that in condemnation proceedings the federal court shall adopt the forms and methods of procedure afforded by the law of the state but does not invoke the state law on any 'questions of substantive right—such as the measure of compensation—grounded upon the Constitution of the United States.'" And in United States v. Certain Lands in the Borough of Brooklyn, 2 Cir., 129 F.2d 577, 579, the court stated: "Nor are we obliged to follow the local law in construing a federal statute which provides that distribution in respect to encumbrances 'shall be just and equitable.'"

In John Hancock Mutual Life Ins. Co. v. Casey, supra, 147 F.2d at page 766, the court stated that it would not be "just and equitable" to give the mortgagee the whole of the deposit, made successively by the United States, so long as the mortgage debt remained outstanding, since this would deprive the debtor of income from the property for an indefinite period and would amount to paying the debt at an accelerated rate. The debtor is entitled to his contract which had no provision for acceleration, and the benefit of his bargain so long as the security rights of the mortgagee are not substantially impaired. However, the mortgagee's rights must be fully respected when the fund is paid into the registry in advance by the United States and this may be done by the court by setting aside a portion thereof sufficient to meet all payments due from the mortgagor. If this is done the mortgagee has no standing to object to a distribution of the balance of the deposit to the debtor. Thus, any default could be made good and the mortgagee would be fully compensated for any impairment to his security resulting from the taking by the government. Although the taking in the cited case was for a term of years ending at a particular date or extendable thereafter during the national emergency at the election of the United States, such fact does not change the meaning of the statements asserted by the court.

The award paid in the condemnation proceedings is frequently spoken of as a substitute for the property taken. In North Coast Railway Co. v. Hess, 1909, 56 Wash. 335, 105 P. 853, 855, it is stated that "When the railway company paid into court the sum determined by the judgment to be the full value of the land to be taken, the sum so paid represented the land itself, *and these various lienors had the same claim upon this fund for the satisfaction of their claims as they had against the land itself*, notwithstanding the fact that their claim of record was only against the land. [Emphasis ours.]"

In the instant case a foreclosure sale was held prior to the time of taking under condemnation proceedings in which the mortgagees bid in the full amount of the debt.

The usual foreclosure action in lien states is by an action in equity or a statutory proceeding with a sale of the mortgaged property, the proceeds of which are applied to the payment of the mortgage debt, with interests and costs, and if any surplus money is realized over and above the sum necessary to satisfy the mortgage debt, it will go first to subsequent lienors joined as defendants whose interests are transferred by the foreclosure to the surplus fund, while the balance goes to the owner of the property. Walsh on Mortgages, § 67. This principle may be carried to its logical conclusion in the situation where a condemnation award is made after foreclosure action is brought, so that if the award is more than the debt any surplus over and above whatever debt remained against the property would rightfully belong to the mortgagor.

In the case of Olmsted County. Bank & Trust Co. v. Pesch, 1944, 218 Minn. 424, 16 N.W.2d 470, 471, it is said that "It is elementary that upon a foreclosure sale of the property the mortgage debt is extinguished to the amount of the purchase money. The result is the same whether the premises be bid in by the mortgagee or purchased by a third person."

The Washington law is fully set out in Cochran v. Cochran, 114 Wash. 499, 195 P. 224, 225, as follows: "It has become the well-settled law of this state that a mortgage, unlike a mortgage at common law, does not vest title in the mortgagee, but only creates a lien upon the land in favor of the mortgagee as against the interest of the mortgagor, and that a foreclosure sale of the land looking to the satisfaction of the mortgage debt creates no greater interest in the land in the purchaser at such sale, during the period allowed by statute within which the mortgagor may redeem. In other words, the mortgagor is not by such sale divested of his title to the land prior to the expiration of the redemption period, and can even then be divested of his title only upon his failure to redeem during that period." Hence it would follow that even though the foreclosure proceedings and sale preceded the condemnation action, the mortgagor had not lost all his interest to the mortgagees so that said mortgagees would be entitled to the entire award plus the non-condemned portion of land under that mortgage. The certificate of sale from the sheriff which the mortgagees received following the foreclosure sale was at most merely evidence of an inchoate estate which may or may not ripen into title and is nothing more than a chose in action. However, the purchaser does acquire an interest in the property purchased at the foreclosure sale for which value was given and he may not be deprived of that interest without compensation. See also Atwood v. McGrath, 137 Wash. 400, 242 P. 648, 651; Nelson v. Lanza, 18 Wash.2d 167, 138 P.2d 667, 668; Bonded Adjustment Co. v. Helgerson, 188 Wash. 176, 61 P.2d 1267. Thus the mortgagor holds the right of redemption on property which has been sold under foreclosure sale and by such act he may defeat the inchoate right of the purchaser and thereby restore the property to the same condition as if no sale had been attempted. The act of redemption by the owner annuls the sale and defeats any title of the purchaser. The mortgagor does not take a new title but rather title is restored to him free of the encumbrance of the lien which has been foreclosed. 37 Am.Jur. § 854.

The title to the property at the time of taking was in the appellants, heirs of the mortgagor, while the appellees assignees of mortgagees and purchasers at the foreclosure sale, had only a lien on the property, all of which transferred to the fund from the condemnation action in the *same ratio* as their rights in relation to the land. The appellees were entitled only to so much of the award as was necessary to preserve and protect their security rights. Both the mortgagor's and the mortgagees' interest must be respected for each and every interest must be compensated for and protected. It is said in Jones on Mortgages, § 843, that, "As between the mortgagor and mortgagee, the mortgagee is, in most jurisdictions, entitled to be compensated for the injury to his interest and first paid, although the residue, if any, may then go to the mortgagor * * *."

It has been stated by one authority that although there is much diversity of

opinion as respects the rights of mortgagees in eminent domain proceedings and as to their treatment in the assessment of damages, their interests are generally protected by the courts. Lewis, Eminent Domain, 3d Ed., § 720. We are in agreement with such statement, but this does not deny the recognition and preservation of the mortgagor's rights. See City of Chicago v. Tebbetts, 1881, 104 U.S. 120, 26 L.Ed. 655; City of Detroit v. Fidelity Realty Co., 1921, 213 Mich. 448, 182 N.W. 140; 18 Am.Jur. p. 868, § 235; 29 C.J.S., Eminent Domain, § 201.

The mortgagees here chose to have their debt satisfied by taking title to the non-comdemned portion of the land and also the entire award for the condemned portion, but as it will be seen by the foregoing the demand on the fund may be allowed only to the extent of the difference between the value of the non-condemned portion and the value of the interest they held under the mortgage. If the non-condemned portion of the whole tract purchased by them by surrendering their mortgage claim at the foreclosure is of the value of their mortgage lien they have no claim upon the fund.

In the case of In re Dillman, 276 Mich. 252, 267 N.W. 623, 625 it is stated that "The underlying theory of the right of a mortgagee to part or all of the award is that, as the parties are powerless to prevent the taking of the property by the public and the mortgagee loses his lien upon the part taken, the award equitably stands in the place of the land taken; and, as the mortgage does not cover the award in law, it is held to operate as an equitable lien thereon. This results in two separate encumbrances, the legal mortgage lien on the remainder of the land and the equitable mortgage lien on the award."

When the foreclosure action follows the taking in the condemnation proceedings, such action does not extinguish the mortgage lien, but rather it continues throughout and charges the award with any deficiency as was seen in the last above cited case. The question then arises as to the effect of the foreclosure action when it precedes the taking in condemnation and where there is no deficiency but rather only the removal of the security in part. The distinction between foreclosure before condemnation and foreclosure after condemnation where part of the mortgaged property is taken, rest on the fact that only the balance of the property may be sold. We see no great problem on this score for in the situation when foreclosure follows the condemnation proceedings, the deficiency may be taken out of the award, while in the case where there is a foreclosure prior to condemnation proceedings, a portion only being condemned, and the mortgagee desires to retain the balance of the land (there being no redemption), he still goes against the award for the deficiency or value of damage to his security, if any. However, the non-condemned portion must be first evaluated.

The mortgagees in the instant case bid in the full amount on the foreclosure sale and received the sheriff's certificate of sale. This certificate was subsequently perfected by execution of a deed by the sheriff following the condemnation action and after the redemption period had expired. According to Jones on Mortgages, § 2121, "The process of divesting a mortgagor of his title is incomplete until after the execution and delivery of the sheriff's deed after the foreclosure sale. Upon compliance with the terms of sale, and expiration of the period of redemption, if any, the purchaser is entitled to a deed, duly executed by the proper officer * * *. * * * From that time [delivery of the deed] the property is at his risk, and having accepted the deed he can not repudiate the contract." The delivery of the deed acts to give effect to the sale as of the time of delivery. The appellees took absolute title to the non-condemned portion of the land in partial satisfaction of the debt, and were entitled to such portion of the award for the condemned land as would fulfill coverage of their interest. The value of the non-condemned portion is subtracted from the amount awarded for the condemned portion in order to determine the amount due the mortgagees. See Silberman v. United States, 1 Cir., 1942, 131 F.2d 715, 718, for a similar method of apportionment in a case involving a lease. The appellees could have refused the deed to the remainder of

**450**

the tract and then relied on the fund alone to pay the debt due them; and if this did not cover the amount due, they could then go against the land to satisfy the deficiency. However, they chose a different course, and must abide thereby.

 The failure to redeem does not entitle the appellees to both the balance of the land and the award in full as we have shown unless it be determined that both are necessary to satisfy the mortgage debt. The appellees' contention in that regard cannot be approved. The condemnation proceedings interfered with the process of redemption and to require such a step following that action would be without justification in law or in equity. It could not accomplish the result for which it was intended, that is, the restoration of the full interest in the land to the mortgagor free of the interest of the mortgagees or purchasers or assignees thereof.

◼ The appellees may share in the award only to the extent that they suffered damage, and where the mortgagees foreclose and a condemnation follows, the mortgagees 'hold a lien for any deficiency that may exist *or for damage to their security*. The mortgagees in the instant case bid in the full amount on the foreclosure sale, hence there was no deficiency so that their lien against the award is for the damage to their security. As stated in Calumet River R. Co. v. Brown, 136 Ill. 322, 26 N. E. 501, 502, 12 L.R.A. 804, "It is certainly in accordance with equitable principles that the balance of the mortgaged land be sold first, before resorting to the strip taken for railroad purposes."

The appellees elected to keep the non-condemned portion and took the sheriff's deed. To that extent the debt was satisfied so that their lien on the fund was the difference between the debt and the land retained. The deeds were taken for the original consideration of $36,586.33, and according to Jones on Mortgages, 7th Ed., No. 1709b, "The sum for which the mortgaged premises were sold must so long as the sales stands, be taken, as between the parties to the suit, as conclusive test of their value; and the amount of the deficiency for which a decree shall be entered is as-

certained accordingly, and not by taking the market value at the time, in case this happens to exceed the amount obtained at the sale."

The appellees in their brief state that "Not having redeemed mortgagors are not entitled to any part of the land or the award." This assertion is not in keeping with the equitable principles or the statutory provisions involved herein. The ratio between the award and the security behind the debt of the condemned portion should be determinative of the part to which the appellees are entitled since they set the value of the security. The mortgagees had a right to the property only if the mortgagor failed to pay the debt. Since the redemption process was interrupted, condemnation proceedings having made such act impossible, the mortgagees are not thereby given an advantage over and above the mortgagor. The mortgagees are entitled to the value of the property *only insofar as it was security for the debt and in such a sum as would compensate the mortgagees for impairment of the security.*

The case must be returned to the District Court for a finding on the value of the non-condemned property with a judgment in accordance with the views expressed in this opinion.