R. M. WILBURN, Appellant,

v.

George E. DOLEZAL, individually, and George E. Dolezal, Trustee, Appellees.

No. 6953.

United States Court of Appeals Tenth Circuit.

July 5, 1962.

Warren Watkins, Claremore, Okl., for appellant.

G. Raymond Bassman, Claremore, Okl. (Bassman, Gordon, Mayberry & Lavender, Claremore, Okl., on the brief), for appellees.

Before MURRAH, Chief Judge, and BREITENSTEIN and HILL, Circuit Judges.

HILL, Circuit Judge.

This appeal is from an order of the trial court disbursing to appellees the funds deposited with the court below, as compensation for the taking of an oil

10. Our decision in this case does not result in an approval of the instruction as given by the district court.

and gas leasehold estate in a condemnation proceeding. A detailed statement of the facts giving rise to the appeal is essential to an understanding of the issues presented.

In 1947, a written contract was entered into between Shell Oil Company, Incorporated (appellees' predecessor in interest) and Standard Parts Company (appellant's predecessor in interest) providing for the creation and operation of a water flood project to obtain maximum production of oil from certain of their separately owned leases. Standard Parts was the owner of a leasehold estate bounded on the east, north and west by certain oil and gas leasehold estates owned by Shell. Under the terms of the agreement Shell agreed to drill, equip and operate four water injection or in-put wells along the north and east boundary lines of the land covered by the Standard Parts lease and Standard Parts agreed to drill, equip and operate three of such wells along the west line of the leasehold estate. The wells were to be operated for the mutual benefit of the separately owned leases and were to be located on the land covered by Shell's leases but within ten feet of the Standard Parts lease line. The contract also provides that in the event either party abandoned the project, the other succeeded to its interest and further that "Neither party shall acquire hereunder any interest in the leasehold estate of the other, or in the oil produced therefrom".

The seven injection or in-put wells were drilled by the respective parties and put into operation in accordance with the terms of the contract. Subsequently, additional wells were drilled and put into operation but the record does not disclose which of the parties drilled them or where they were located.

As previously indicated, appellant (Wilburn) succeeded to the rights of Standard Parts under the contract and appellees (Dolezal) acquired Shell's interest under the contract. Subsequent to the time these interests were acquired, Wilburn commenced an action against Dolezal and other parties interested in the Shell leases, in the District Court of Rogers County, Oklahoma, for the recovery of damages for an alleged failure to properly operate the water injection wells. This lawsuit was pending in the Oklahoma Court at the time the condemnation proceedings hereafter referred to were commenced.

The record discloses that two separate condemnation cases were filed in the court below [1]—Case No. 5000, involving the Standard Parts or Wilburn lease and Case No. 4847, involving the Shell or Dolezal leases.[2] Wilburn was made a party to Case No. 4847 involving the Shell or Dolezal leases because of his pending suit against Dolezal in the Oklahoma Court, but Dolezal was not made a party to condemnation Case No. 5000 involving the Standard Parts or Wilburn lease. Wilburn filed his answer in Case No. 4847, alleging that he had, or claimed, an interest in the tracts of land being condemned and was entitled to just compensation therefor. Thereafter, Dolezal filed a motion in Case No. 4847 for an order of the court disbursing to him the funds deposited with the court as the government's appraised value of the leasehold estate, alleging that he was the sole owner of such estate and that none of the other parties to the action including Wilburn, had any right, title or interest in or to the leasehold or said funds. Wilburn filed a Response to such motion, alleging that Shell had abandoned the water flood project; that under the terms of the 1947 contract, Standard Parts became the owner of the water injection wells; and that, having succeeded to the rights and interest of Standard Parts, he was entitled to just compensation for the fair market value of the wells out of the funds deposited with the court.

1. 40 U.S.C.A. § 258a; 33 U.S.C.A. §§ 591, 701.

2. While this appeal is from an order entered in Case No. 4847 below, the proceedings in both cases are made a part of the record by stipulation of the parties.

A hearing was held by the court below on Dolezal's motion to disburse the funds. The undisputed testimony [3] presented at that hearing shows: The in-put wells do not have any value separate and apart from the leasehold estates as salvage or otherwise but when used to inject water into the ground to aid in the maximum recovery of oil, they do have a "use" value which enhances the value of the leasehold estates to which they are appurtenant; the in-put wells would be compensable to the extent that they were being used profitably in aiding in the recovery of oil from the leases and therefore enhanced the value of the respective leases to the extent they were used for that purpose; that in appraising the Wilburn lease in Case No. 5000 and the Dolezal lease in Case No. 4847, the fact that the in-put wells could be and were being used in the operation of the water flood project was taken into account by the appraisers and an enhanced value was placed on each of the respective leases by reason of the existence and use of such wells, in other words, compensation for the wells was included in the award for future production of oil from the leases.

At the conclusion of the hearing, the lower court inquired if Wilburn had agreed with the government on a settlement for his leasehold estate in Case No. 5000 and was advised that no such settlement had been made. However, it later developed that Wilburn had agreed with the government upon a settlement and Case No. 5000 had been finally concluded, and the funds deposited in that case disbursed to Wilburn. The court was advised of this development by letter from counsel for Wilburn, which is in the record.

Thereafter, the court entered its order finding that Wilburn had no right, title or interest in or to the properties involved in Case No. 4847 or claim against the funds deposited with the court and ordering that such funds be disbursed to Dolezal without prejudice to his right to a trial on the merits with respect to just compensation. Wilburn perfected this appeal from that order.

The primary question presented for determination is whether Wilburn has a compensable interest [4] in the leasehold estate in question. Neither counsel has supplied us with any helpful citations of authority nor have we been able to find any through our efforts. It is simply a case to be decided from the undisputed facts and an interpretation of the 1947 agreement.

From an examination of the agreement between the original lessees providing for the drilling and operation of the in-put wells, it is clear that such wells were to be drilled and used for the mutual benefit of the separately owned leasehold estates and that neither party thereby acquired any interest in the leasehold estate of the other or in the oil produced therefrom. Therefore, by the express terms of the agreement, Wilburn, at the time of the taking here, did not have any interest in the leasehold estate owned by Dolezal for which compensation was paid.

It is true that under the terms of the agreement Wilburn acquired the right to the use of the wells in operating the water flood project for the benefit of his lease but this can hardly be construed as giving him an interest in Dolezal's leasehold estate, such as would entitle him to share in the award for that estate.

Wilburn further contends that Dolezal's predecessor, Shell, had abandoned the water flood project and under the terms of the contract upon abandonment by one of the parties, the other party became the owner of the entire interest in the wells. Therefore, he argues that as sole owner of the wells, he is entitled to share in the award deposited with the clerk to the extent a valuation was placed

---

3. Each of the witnesses called to testify was qualified as an expert experienced in water flood operations and appraisals thereof.

4. Swanson v. United States, 9 Cir., 156 F.2d 442, 170 A.L.R. 258; United States v. Bransen, 9 Cir., 142 F.2d 232.

upon such wells and included in the deposit. A complete answer to this contention is again the original agreement, which precludes one party from acquiring any interest in the leasehold of the other by virtue of the project. Moreover, the evidence is conclusive that the in-put wells have no intrinsic or salvage value and the deposit with the court does not purport to include any such valuation. The wells had only a use value, to the extent they enhanced the value of the respective leasehold estates and this was taken into account in the appraisal of each leasehold.

We must therefore conclude, as the trial court did, that Wilburn had no compensable interest in the leasehold estate, the subject of this action, or in the award made for the taking of such estate. His interest in the wells is limited to the enhanced value of his own leasehold estate by reason of the use of the wells and we must assume that the award which he received in Case No. 5000 included compensation for such interest.

The only remaining question is the sufficiency of the proceedings used below to determine appellant's compensable interest, if any, in the leasehold estate in question.[5] Dolezal filed his Motion To Disburse and Wilburn appropriately filed his Response, thereby joining the issue of Wilburn's compensable interest in the leasehold estate. The sole question was whether Wilburn had any compensable interest. The court heard the evidence relevant to the issue, including the expert testimony, and undoubtedly considered the court files in both Cases 4847 and 5000, which it had a right to do, together with the letter from counsel for Wilburn concerning the settlement with and payment to Wilburn for his interest in the leasehold estate covered by Case No. 5000. The issue involved then became only one of law, and the court properly resolved that issue against Wilburn by entering the order to disburse.

From the record, as a matter of law, it is clear to us that Wilburn was compensated in Case No. 5000 for his interest in the in-put wells and is not entitled to participate in the funds paid into court, as compensation in this case. To hold otherwise, would permit him to recover twice for such interest.

Affirmed.

5. See Hanna Paint Manufacturing Company, d/b/a Hanna Paint Mfg. Co. of Texas, v. Rodey, Dickason, Sloan, Akin & Robb, 10 Cir., 298 F.2d 371, approving the use of motion procedure to procure disbursement of funds on deposit with the court.